844

## GALAN et al. v. LUNA.

### No. 9926.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 11, 1937.

Rehearing Denied April 7, 1937.

H. S. Bonham, Jack R. Todd, and J. A. Wood, all of Corpus Christi, for appellants.

Albert W. Searcy, of Corpus Christi, for appellee.

MURRAY, Justice.

Appellant Gamaliel S. Galan prosecuted this suit as plaintiff in the district court of Nueces county against Josefa Perez Luna, seeking to set aside a deed executed by his father, Antonio F. Galan, conveying lot No. 1, block No. 67, Bluff Portion of the city of Corpus Christi to appellee, Josefa Perez Luna. It was alleged that Antonio F. Galan did not possess sufficient mental capacity to execute the deed at the time that same was signed and acknowledged by him.

The trial was to a jury and the following sole issue was submitted to the jury:

"Special Issue No. 1: Do you find, from a preponderance of the evidence, that on September 13, 1929, the deceased, Antonio Galan, did not have mental capacity sufficient to make the deed to Josefa Perez Luna, introduced in evidence herein?"

The jury answered: "He did have mental capacity," and judgment was accordingly entered denying Gamaliel S. Galan any relief; from which judgment he has prosecuted this appeal.

The only propositions presented have to do with alleged misconduct of the jury. The testimony taken upon this question is short and will be here copied in full:

"Robert Sechrist, called as a witness by plaintiff, having been duly sworn, upon direct examination by Mr. Todd, testified:

"My name is Robert Sechrist. I served on the jury in the case of Galan v. Luna in this court last week and one of the jurors mentioned in the presence of two of the others that he had some relatives and friends who were to be found customarily under the influence of drugs and who could not use their machines as well as when not under the influence of drugs. That was discussed by them. I don't remember when that was discussed by them. It was either right before we left for lunch or just as soon as we came back. I believe it was after we came back. There were two or three of the jurors that brought up the subject and it was discussed. As to just what was said about it, well, we were discussing the facts that were brought up by Dr. Giles in the case, because that was what we were to base the decision on about the effect of drugs and morphine and whiskey on a man and about the extent of the effect over a period of several hours. It was not brought up in the case, how soon or after the drug was given that he had signed this document or anything about the time and in the discussion, trying to decide whether or not this man had the mental capacity—we naturally discuss-

ed the question and it was brought up by one or two of the jurors that there has been, that he had friends or relatives who had been dope fiends. Of course, that is different from what this case is. This was that after a period of time, after taking dope for a period of time on their own accord their minds become dull after this drug has died off. In order to have better mental capacity they would take more drug. But we also discussed the fact that that did not have anything to do with this case, because this drug was given by a physician to a man in a bad condition, due to disease and that in that case it was usually the opposite. They give drugs to deaden the pain instead. Of course, if it was given over a period of months or years we figured it would be the reverse. I say that this discussion took place just about the time when we were taking up the testimony of Dr. Giles with regard to administering the drugs. One of the jurors I don't remember who it was, said 'that don't have any bearing on this particular case and it is a different form of administering drugs from what a doctor would administer'—and we dismissed it there and started to talking about the actual testimony given on the stand. I do not recall any one man who was pointed out as a San Antonio man or druggist. I don't recall anything like that. I just recall the discussion generally.

"Cross-examination by Mr. Searcy. Witness testified:

"None of this conversation influenced me in my verdict. * * *

"G. H. Doyle, called as a witness by plaintiff, having been duly sworn, upon direct examination by Mr. Todd, testified:

"My name is G. H. Doyle. I did serve on the jury last week in the case of Galan v. Luna, in this case. I do not remember that after the jury filed in the jury room and before we went out to lunch several of the jurors alleged or said in a loud voice 'let's give it to the woman.' They did not say that before we went to lunch. After we started our deliberations that was said by several of them, before there was any discussion at all, that they would give the property to the woman, but not before we began our deliberations, but after we began the deliberations. I do not recall how many times that was said and by approximately what number of jurors. I just remember hearing it said. I would not say how many of them said that;

but there was quite a number of them. I do not remember of that being brought up in the discussion about Josefa Perez Luna having worked with and for Antonio S. Galan, the deceased, and was therefore entitled to this property. Sure, I remember that some of the jurors discussed the background of the case. Why didn't we have the right to discuss the back-ground of the case? I told the other jurors they should not take that into consideration, but that the question we were to decide was whether or not this man had the mental capacity, that is what the Judge told us to decide.

"Q. Do you remember whether or not you heard any of the jurors speak of friends and relatives of theirs who were dope addicts and who they thought could clearly and did transact their business better than before? A. After that came up that was discussed and that was when we had to decide whether or not this man had mental capacity and the evidence showed he was under the influence of drugs part of the time. One of the jurors told about knowing a man who had been in the habit of using drugs and that when the drugs died out he was not in as good shape as when he would take the drugs.

"Cross-examination by Mr. Searcy. Witness testified as follows:

"That statement did not influence me in my verdict in any way. * * *

"Nathan Smith, called as a witness by plaintiff, having been duly sworn, upon direct examination by Mr. Todd, testified:

"My name is Nathan Smith. I served on the jury in the case of Galan vs Luna last week in this court.

"Q. Do you remember hearing anyone on the jury at that time after they filed into the jury room saying 'let's give it to the woman,' referring to the property in litigation? A. A short time after we took up the discussion of it I think there was something said like that, saying for them to decide it in favor of the defendant. I think that was just a few minutes after we started I remember something about a juror saying something about friends and relatives who had been doped and could think better when under the influence of Drugs. One or two of them mentioned instances of people they knew. I don't recall whether it was friends or relatives, to the effect that these people were usually in better mental condition after having taken the dope than after it

had died out, to that effect. Someone told the ones who discussed this that that was not proper and should not be considered.

"Cross-examination by Mr. Searcy. Witness testified:

"Did the statement influence you in your verdict in any way? A. No sir. It did not.

"The Court: 'I think the case was tried fairly and I don't know how I would try it any better if I tried it again.'

"Mr. Todd: 'We have testimony here as to misconduct.'

"The Court: 'I don't care to hear anything further as to misconduct as I don't think the evidence establishes any misconduct.'"

The first contention made by appellant is that the jury received other testimony after they had retired to consider of their verdict in that some juror stated in effect that he had either relatives or friends who used drugs, and that their minds were clearer and better while under the influence of drugs than otherwise. This it is contended violates the provisions of article 2234, and was sufficient to require the trial judge to have granted appellant a new trial and his failure to do so constitutes reversible error.

Dr. Giles had testified on the main trial of the case that Antonio Galan was sick at the time the deed was signed and had been given drugs to relieve his suffering.

■ It will be observed, however, that from the evidence taken on the hearing of the motion for a new trial that it does not appear whether this statement by the juror about his experience with people who were drug addicts was made before or after the jury had arrived at a verdict. It might be surmised that it was made before a verdict had been agreed upon, but this is not made clear. It does affirmatively appear that the jurors who heard the statement were not influenced thereby; that some one pointed out that there was a difference between a drug addict and a patient who had been given drugs by a doctor, and they should not consider the matter raised by the juror. It is not shown that the statement by some unidentified juror was in conflict with the testimony given upon the trial. The evidence is insufficient to show misconduct and especially is this so in view of the fact that the trial judge who heard all the testimony ruled that there was no misconduct. International-G. N. Ry. Co. v. Cooper (Tex. Com.App.) 1 S.W.(2d) 578; Russell v. Adams (Tex.Civ.App.) 18 S.W.(2d) 189; Bradley v. T. & P. Ry. Co. (Tex.Com. App.) 1 S.W.(2d) 861; Fox v. H. & T. C. Ry. Co. (Tex.Civ.App.) 186 S.W. 852.

■ The next contention is that the statement by some of the jurors to the effect that they favored giving the land to the woman before they had answered the one special issue submitted to them by the court constituted misconduct of the jury. We overrule this contention. In the first place, there was no agreement to find for the woman, and, in the second place, there being but one special issue, the jury could not be so unintelligent and blind as not to know that if they answered that Galan had sufficient mental capacity to make the deed that the woman, Josefa Perez Luna, would be declared to be the owner of the land. Davis v. Christmas (Tex.Civ.App.) 248 S.W. 126; Booth v. Drought Co. (Tex.Civ.App.) 89 S.W. (2d) 432.

The trial judge did not abuse his discretion in overruling appellants' motion for a new trial, and accordingly the judgment will be affirmed.

### On Motion for Rehearing.

A majority of this court have decided that the evidence taken on the motion for new trial, with reference to the alleged misconduct of the jury is sufficient to show that the statement made by some juror with reference to the effect the use of drugs had on some persons that he knew, occurred during the deliberation of the jury and before they had arrived at a verdict. Therefore, our holding in the original opinion to the contrary is withdrawn and we now hold that the evidence is sufficient to show that the statements were made before the jury had arrived at a verdict. This, however, does not change our original disposition of the case. The record shows that when these statements were made that some member of the jury admonished such juror, in effect, that it would be improper to consider such matters, and that it was an entirely different matter where drugs were used by drug addicts and where drugs were administered to a sick patient by a doctor. This apparently ended the improper discussion and same was thereafter not considered by the jury.

No juror testified that the statement influenced his verdict.

The trial judge, who heard all of the testimony, overruled appellants' motion for a new trial. The record does not show that the jury were ever in disagreement as to what their answer should be to the special issue submitted, but, rather, indicates that they were all unanimous in favor of answering the issue in the manner in which they did answer it, from the very beginning.

We cannot say in this case that the trial judge abused his discretion in overruling appellants' motion for new trial. Blue Diamond Motor Bus Co. v. Hale (Tex.Civ. App.) 69 S.W.(2d) 228; Bradley v. T. & P. Ry. Co. (Tex.Com.App.) 1 S.W.(2d) 861; So. Traction Co. v. Wilson (Tex.Civ. App.) 241 S.W. 636.

Appellants' motion for rehearing will be overruled.