## TEXAS EMPLOYERS' INS. ASS'N v. HICKS.

No. 6116.

Court of Civil Appeals of Texas. Amarillo.

Jan. 29, 1951.

Rehearing Denied Feb. 26, 1951.

Second Motion for rehearing denied March 19, 1951.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, and J. B. Cotten, Seagraves, for appellee.

PITTS, Chief Justice.

This is a compensation suit filed by appellee, C. L. Hicks, against appellant, Texas Employers' Insurance Association, insurer, for compensation as a result of an alleged injury sustained by appellee on June 11, 1949, while acting in the course of his employment when employed by George P. Livermore, Incorporated. The case was tried to a jury and judgment was rendered on the verdict for appellee awarding him $25 per week for 300 weeks from which judgment appellant has perfected its appeal.

Appellant predicates its appeal upon eight points of error, complaining about improper argument of opposing counsel, jury misconduct, bias and prejudice on the part of the jury, the trial court's refusal to submit some of appellant's special requested issues and its refusal to permit appellant's counsel to make certain argument.

With reference to the charge of improper argument of opposing counsel, the approved bill of exception reveals the argument made about which appellant complains. The record reveals that both parties offered medical testimony concerning the results of appellee's injuries in question and both parties had lay witnesses in attendance at court.

Each party had offered two lay witnesses who testified concerning the apparent physical ability of appellee to pick cotton for wages after his alleged injuries had occurred. When all of the witnesses were sworn by the trial court before any evidence was heard, appellee had several lay witnesses sworn who never testified at the trial. Counsel for appellant, during his argument before the jury, said in part: "Now, what are the other actions that speak in this case? You remember right after you were sworn in when Mr. Black called his witnesses, and he had a line of them back there. I didn't count them. I didn't get all their names. I did get a few of them, but oh, Gentlemen, and I think they were under your control, because you had them out in the hall, and they never did come in to tell you that what Mr. Garrett and what Mr. Harris came in and said that he pulled bolls like any normal man, Mr. Garrett said he'd been seeing him, been knowing him for three or four years, and said he acted the same now as he did then, he couldn't see any difference. But of course, Mr. Black is going to tell you, 'Well, they weren't watching.' Gentlemen, that indicate stronger than anything else that Mr. Hicks looked the same, because when you meet somebody that you know and have known and you see any difference at all in the way they're doing or acting, why, you stop and say, 'Bill, what's the matter?' You don't go on and just say 'Yes', speak and go ahead. That speaks louder than anything else, that he was all right and doing all right, and working all right, and pulling bolls all right, just like he had before June 11."

Following the argument made by appellant's counsel, "Mr. Black", appellee's counsel, in replying to such argument made by his adversary, discussed briefly before the jury the testimony given by appellant's two lay witnesses, Mr. Garrett and Mr. Harris, and called their names in so doing. He summed up their testimony by saying: "  *   *   *   they don't vary in the least from what Mr. Hicks has told you, but they corroborate and substantiate his testimony that he did go out there and pull some cotton, that he couldn't pull near as much as he used to before he got hurt. Well, we could parade 6 or 8 more witnesses across the stand and have them testify to the same thing."

As this argument was being made by appellee's counsel, appellant's counsel objected on the grounds that appellee's counsel was commenting on what the testimony of the witnesses who did not testify would have been and because such constituted the offering of new evidence. The trial court did not pass on appellant's objection further than to say, "Go ahead, Mr. Black, stay in the record."

The material difference in the contentions made by the parties concerns the different construction they place on the meaning of the language used in the argument made by appellee's counsel and not about the rules of law governing the making of such argument. In its contention made about the argument of appellee's counsel, appellant says: "In the case at bar, Mr. Black did *not intimate* what the witnesses would testify but *flatly stated that they would testify the same as the two witnesses that he had put on the stand.* (Appellant's emphasis). If that is not offering new evidence, then it is inconceivable that an attorney in his argument could offer new evidence." In reply to appellant's charges, appellee contends that his counsel argued that his witnesses who were referred to in the argument and who did not testify would have given the same testimony that the witnesses, Garrett and Harris, appellant's two lay witnesses, had given if his said witnesses had testified and that the testimony of Garrett and Harris corroborated that given by appellee. It therefore appears that appellant contends that appellee's counsel meant to say the unused witnesses would have given the same testimony that appellee's two lay witnesses had given, while appellee contends that his counsel actually said in his argument that the witnesses not used would have given the same testimony that appellant's two lay witnesses had given. At any rate, according to the interpretation they both give the argument of appellee's counsel, such evidence as would have been given by the witnesses not used would not have been "new evidence" as contended by

appellant, but it would have been a repetition of evidence already heard, in any event.

The record reveals that witnesses Jim Welsh and Clarence Alvin Thompson were the two lay witnesses who testified for appellee and that witnesses J. I. Garrett and W. B. Harris were the two lay witnesses who testified for appellant. Appellant's bill of exception number 3 sets out at length the argument made by appellee's counsel before he reached the argument about which appellant complains. Nowhere in that argument, as reflected by the record, did appellee's counsel refer to the witnesses, Welsh and Thompson, or to any testimony that either of them had given at the trial. The argument does reflect that Mr. Black, appellee's counsel, did call the names of appellant's lay witnesses, Garrett and Harris, and gave his version of their testimony. He further stated that their testimony did not vary from that given by appellee and that the other witnesses not used would have given the same testimony.

██ It appears to us that appellant's counsel by his argument, in effect, invited appellee's counsel to explain to the jury why appellee's long line of lay witnesses, who were in the hall and under his control, did not come into court and testify concerning the facts given by appellant's lay witnesses, Harris and Garrett. In reply thereto appellee's counsel said, in effect, that they would have given the same testimony appellant's lay witnesses, Harris and Garrett, had given if they had testified. According to all of the authorities cited by both parties and many others, it is our opinion that the argument of appellee's counsel about which appellant complains, was not prejudicial, inflammatory or improper but it was, in all respects, a proper reply to the argument previously made by appellant's counsel and appellant's point to the contrary is overruled.

Appellant briefs its 2nd, 3rd and 4th points together complaining about jury misconduct. It is charged by appellant that, during the deliberation of the jury, one juror related to the other jurors that he had sustained a strain to his own back and it had required a long time to get over the in-

jury; that another juror, during the jury's deliberation, related to other jurors an instance in which his brother had sustained a back injury from which he had never recovered. Appellant contends that in each instance such constituted misconduct on the part of the jury and that a combination of the two constituted misconduct. Appellee resists such charges with a contention that, at a hearing had on the question of jury misconduct, the evidence was conflicting and the trial court as the trier of facts resolved the issues against appellant's claims, which binds the reviewing courts as was held by the Supreme Court in the case of Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62.

On the hearing of appellant's motion for a new trial seven of the jurors testified. One of them testified that nothing was said during the jury's deliberation about any injuries of other people. He further testified that he did not think anything was said about other people's injuries and that such was not said in his presence. Another juror testified that he heard something said by somebody during the jury's deliberation about having had his back injured, but he did not recall what was said about it and he did not state who made the statements but said there was some discussion about it and Mr. Pool, the foreman of the jury, warned them not to consider such a matter. He further testified that some further remark was made about some brother or relative having had a back injury but he only heard it mentioned and did not hear all that was said but he did not state who made such remarks. Harvey Pool, foreman of the jury, testified that during the jury's deliberation someone mentioned the fact that somebody had been injured and it was probably discussed a little but he warned them as foreman that the case before them must be considered on its merits. He further testified that he could not say who mentioned it or what was said about it. He likewise testified that during a recess period and outside of the jury room, Mr. Brown, a juror, told him about a back injury he had previously received. Mr. Brown corroborated Mr. Pool's testimony only about his having told Mr. Pool about his back injury, except that

Mr. Brown testified that they had such conversation before the trial court's charge was delivered to them and therefore before the jury began its deliberation. Another juror testified that he mentioned in the presence of two or three jurors, during the jury's deliberation, that his brother was in bed with a back injury, but he did not hear any mention made of any other injury. He testified before the court that his brother had a broken back but his brother's condition could not be compared with appellee's injury. One juror testified that he did not hear any reference made about other people's injuries during the deliberation and two other jurors testified that they did not remember hearing of such. There is no evidence showing who made the remarks about any other injuries except that one juror, Mr. King, testified that he mentioned his brother's injury in the presence of two or three jurors but the evidence reflects that the matter was no more than casually mentioned and there is no evidence showing that anybody undertook to relate the causes or nature of any other injury or that any comparison was made of any injuries and there was no evidence tending to show that anybody undertook to relate what discussion, if any, was had about other injuries. The jurors generally testified that they disposed of all of the issues in accordance with the evidence heard as directed by the trial court and such is presumed to be true until the contrary is shown by a preponderance of the evidence to the satisfaction of the trier of facts.

The trial court made no findings of fact on the issues of jury misconduct but simply overruled appellant's motion for a new trial. In the case of Balque v. Green, Tex.Civ.App., 193 S.W.2d 705, the court held that in such cases it will be presumed that the trial court made such findings as were necessary to support its judgment; that the burden rested upon appellant to establish by a preponderance of the evidence that the jury was guilty of misconduct and that such misconduct probably resulted in injury to appellant. The court there further held that the question of jury misconduct is a fact question, when the evidence is conflicting, to be determined by the trial court and its findings on such issues will not be disturbed on appeal if there is any evidence of probative force to support them. In a hearing on the question of jury misconduct, the trial court is the judge of the credibility of the witnesses and of the weight to be given their testimony. It has been held that in such hearings the trial court has the right to resolve inconsistencies in testimony in favor of the validity of the verdict, Maryland Casualty Co. v. Hearks, supra.

From the evidence previously stated it is our opinion that there were fact issues to be determined by the trial court and its is presumed under the authorities cited that such fact issues were determined in support of the trial court's judgment and this court is bound by the trial court's findings. But, assuming that no fact issue existed, it is our opinion further that appellant failed to establish jury misconduct in any event such as probably resulted in injury to it. Appellant's points to the contrary are overruled. In support of our position we cite the further additional authorities, namely: Texas Motor Coaches v. McKinney, Tex.Civ.App., 186 S.W.2d 714, and Menefee v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 181 S.W.2d 287, and other authorities cited by these cases.

It is also our opinion that the record does not support appellant's contention to the effect that the jury was biased and prejudiced against it and such a contention is overruled.

Appellant next complains in point 5 that the trial court erred to its prejudice in sustaining appellee's objection to the argument of appellant's counsel concerning the failure of appellee to produce Doctor Dunivan as a witness at the trial of the case and in further instructing the jury not to consider such argument of appellant's counsel. Appellant's approved bill of exception presenting this matter reveals that appellant's counsel discussed in his argument before the jury a part of the medical testimony appellant had presented and then referred to the fact that appellee's counsel

had sent appellee to Doctor Dunivan when appellee's counsel objected to the argument and such was overruled by the trial court. Appellant's counsel continued his argument along the same line when appellee's counsel again objected and was overruled. Appellant's counsel continued his argument concerning appellee's failure to produce Doctor Dunivan to tell the jury about what he found when he examined appellee. Counsel further stated in his argument concerning appellee's attorneys in the case, "They can bring Mr. Black and Mr. Scarborough from Abilene and Mr. Cotten from Seagraves, and Doctor Snow from Abilene, but they can't go down a few miles to Seagraves and bring him (Doctor Dunivan) over to tell you what he says about * * *." The trial court then interrupted the argument of appellant's counsel and inquired if Doctor Dunivan lived at Seagraves. Upon learning that the said Doctor lived at Seagraves and outside of Hockley County where the case was being tried and was not available to either party as a witness even by process or was available to both parties alike, if at all, the trial court withdrew his former ruling, sustained appellee's objections and instructed the jury not to consider such argument of appellant's counsel for any purpose. Appellant's counsel then withdrew his argument from the jury concerning the matters in question and asked the jury to follow the instructions of the trial court. For that reason, if no other, appellant should not now be heard to complain. Nevertheless its assignment of error is being here considered.

The rule of law is well settled to the effect that one party is not privileged to comment upon or criticize the failure of the other party to produce a witness unless it is shown that such a witness is under the control of the other party. Certainly such a charge of failure to produce a witness is error where the witness is available to both parties alike or is not available to either party. Stewart v. Shoemake, Tex.Civ.App., 225 S.W.2d 873; Southern Underwriters v. Dykes, Tex.Civ.App., 145 S.W.2d 1105; Montgomery Ward & Co. v. Levy, Tex.Civ. App., 136 S.W.2d 663; Reynolds v. International & G. N. Ry. Co., 38 Tex.Civ.App., 273, 85 S.W. 323, and other authorities cited by these cases. For the reasons stated appellant's 5th point of error is overruled.

Appellant charges that the trial court erred in refusing to submit its special requested issues numbers 1 and 3, which made the following inquiries, respectively:

"Requested special issue No. 1: Do you find from a preponderance of the evidence that the incapacity, if any, of C. L. Hicks was not caused solely by disease?"

"Requested special issue No. 3. Do you find from a preponderance of the evidence that the incapacity, if any, of C. L. Hicks was not caused solely by a congenital condition of his body?"

A careful examination of the statement of facts does not reveal any evidence sufficient to support either of the special requested issues. Certainly there was evidence amply sufficient to support a finding to the effect that appellee had become incapacitated by reason of his alleged injury but there was no evidence tending to show that appellee's incapacity was caused "solely" by disease or "solely" by a congenital condition of the body. Appellant's complaints to the contrary are overruled.

A careful examination of the record and of appellant's points of error does not reveal any reversible error. Its points of error are therefore all overruled and the judgment of the trial court is affirmed.