NOYL CORPORATION et al., Appellants,

v.

HOUSTON INDEPENDENT SCHOOL
DISTRICT, Appellee.

No. 13270.

Court of Civil Appeals of Texas.

Houston.

Oct. 30, 1958.

Commissioners, after a hearing on December 27, 1956, made an award on January 18, 1957, assessing appellants' damages at $40,000. Timely objections were filed by appellants, and on March 29, 1957, appellee deposited said sum with the Clerk of the Court. On April 9, 1957, the $40,000 was withdrawn by appellants. Thereafter, on October 23, 1957, the trial de novo began in the County Court before a jury.

It was stipulated that appellee had the authority to condemn the property and had complied with all requisites of the law relating thereto. The only remaining issue, therefore, was the amount of the damages sustained by appellants by reason of the taking of the land as of March 29, 1957, the date that appellee became entitled under the law to enter into possession of the property by reason of the tender of the Commissioners' award. Appellants sought no damages to the remaining land, and after the parties had offered their proof, the case went to the jury on the sole issue of the market value of the 8.205 acres considered as severed land on March 29, 1957. Thereafter, the jury returned its verdict, finding the market value to be $39,-461.13. Judgment was entered condemning the land in appellee's behalf and appellants were awarded judgment for $39,461.-13. It was further provided that by reason of appellants' having withdrawn $40,000 from the registry of the court, appellee should have judgment against appellants for the excess of $538.89.

R. H. Singleton, Neal Powers, Jr., Houston, Butler, Binion, Rice & Cook, Houston, of counsel, for appellants.

Joe H. Reynolds, Harold R. DeMoss, Jr., Houston, Bracewell, Reynolds & Patterson, Houston, of counsel, for appellee.

WOODRUFF, Justice.

This is a condemnation suit originally filed by appellee, Houston Independent School District, against appellants, Noyl Corporation, S–Terr, Inc., and Smish, Inc., in the County Court at Law of Harris County, Texas, on November 21, 1956, to condemn the fee-simple title to a segregated tract of 8.205 acres of land in the subdivision known as Briarmeadow. The

Appellants in due time filed a motion for new trial, which was subsequently amended. Upon its being heard and overruled, they perfected an appeal to this Court.

They rely upon two points. By Point One appellants contend that the trial court erred in refusing to grant them a new trial because of jury misconduct, and in Point Two they contend that the trial court in the presence of the jury made an improper comment on the weight of certain material proof offered by them, thereby causing irreparable harm and prejudice to

them. In response thereto appellee filed a counter-point in reply to each of these points.

In connection with their amended motion for new trial, appellants offered the testimony of two jurors, by which they sought to establish five acts of jury misconduct. No findings of fact or conclusions of law were either requested or filed.

As stated before, the sole issue was the market value on March 29, 1957, of the 8.205-acre rectangular tract. As shown on the map of a large portion of Briarmeadow Addition, the subject tract measured about 385 feet east and west by slightly more than twice that distance running north and south. It was bounded by paved streets on the north and east and by the rear ends of residential lots and an undeveloped tract of about 5 acres on the south and west, respectively.

In developing their proof as to the market value of the subject property, appellants' initial approach was to show the price which had been paid for the 187-acre tract on a raw acreage basis in June, 1955, some year and nine months before the taking. Mr. Jas. E. Lyon, the president of two of the appellant companies, testified that $4,250 per acre had been paid in June, 1955, for that tract and that the 8.205 acres being condemned was a part thereof. He enumerated the various improvements and utilities which had been installed and placed upon the land and by adding to the per-acre cost of the land an amount which he testified was the part of the cost of the improvements which should be allocated to the condemned property, he arrived at an opinion that it had a fair market value of $76,000 to $77,000.

On cross-examination, however, it was shown that when Mr. Lyon, acting as a trustee, had purchased the 187-acre tract in June, 1955, for $4,250 per acre, or a total price of about $795,000, the seller actually received only $10,000 in cash. However, Mr. Lyon was required to place an additional $65,000 in escrow to assure the purchase of other lands which were necessary for the proper development of the addition. In March 1956, a conveyance was made to appellants of their respective interests in the land, but no cash was involved.

Mr. Thos. H. Bearden, a realtor, appellants' other witness on values, testified that in his opinion the fair market value of the 8.205 acres was $8,300 per acre or a total of $68,101.50 as of March 29, 1957.

On appellants' Exhibit 5, the map to which reference has heretofore been made, there was a notation on that portion of the map representing the 8.205-acre tract, as follows: "Reserved for School site or Future Residential Development. 8.2049 acres."

Appellee offered Mr. Claxton Parks as a witness on real estate values. In giving his qualifications, in addition to his membership in a number of realtor organizations and societies, both on a local and state level, he stated that he had been in the business of selling and appraising real estate in Houston for approximately 30 years, and that he was intimately familiar with the tract of which the 8.205 acre tract was a part, as well as land in that area, because his father had owned considerable land in that vicinity. He stated that in his opinion the 8.205-acre tract in question on March 29, 1957, had a reasonable and fair market value of $4,500 per acre, which would be a gross value for the tract of $36,922.50.

The jury, after deliberating about two and one-half hours, returned a verdict finding that the reasonable market value of the condemned tract on March 29, 1957, was $39,461.13. This comes within a few cents of being $4,810 per acre for the 8.2049-acre tract.

Under Point One appellants contend that there was jury misconduct: (1) in the juror's discussing that placing the school on the subject tract would enhance the value of the remaining land; (2) in Mrs.

Reed's statement to remember that any award must be paid by the taxpayers; (3) in the statement of the juror Parks that he had been pricing land within 20 to 30 miles of Houston and he had arrived at his figure by reason thereof; (4) in Van Sickle's telling the other jurors that a concrete slab for a house cost $600; and (5) that Mrs. Reed's saying "Take it over; I can't help you on this" amounted to her failure and refusal to take part in the deliberations and relying on the other jurors to reach a verdict. Appellants also contend that the cumulative effect of these comments entitled them to a new trial.

By a counter-point appellee says the trial court did not err in overruling appellants' motion for new trial because: (a) the evidence was so inconclusive that the trial judge could have found that the alleged acts of misconduct did not occur; and (b) moreover, assuming that they did occur, it was not shown that any injury probably resulted to appellants.

Two witnesses were called to testify on the motion for new trial. They were Mrs. Fern Reed and Mr. Walter Van Sickle. Mrs. Reed, when asked if there was any discussion regarding what effect the construction of the school would have on the remaining land, testified there was none in arriving at any figures. Upon being asked if there was any conversation about a school's enhancing the value of the contiguous lands, she said she did not recall any conversation that "would have any bearing." The only discussion she recalled was one about the argument made by appellants' counsel "that the school was coming in to take land from the corporation" and in which "we were trying to establish in our minds your (appellants' counsel's) point when you said the school was taking the land * * * trying to verify" whether the taking of the land was against or with appellants' wishes.

Upon being asked if there was any statement made that the construction of the school would benefit the developer, Mrs.

Reed replied that due to the fact that their map showed "a certain section of land out for a school," she assumed that it would be beneficial to the developer. That was her assumption. When asked if she stated to the other jurors that the increased value of the remaining tracts would be something she felt proper to consider, she replied, "No, sir; I am sorry. That is wrong." She also emphatically denied that she said that she felt that this was "something that should be determined." The discussion, she said, concerned "only your (appellants' counsel's) argument that they were technically coming in and forcing the land from you."

Mrs. Reed testified, too, that before any discussion had started Mr. Parks, the foreman, asked that each juror state a "starting figure" which he wrote down. She said Mr. Parks stated that he had been pricing land within a radius of 20 or 30 miles around Houston and "from that point of reasoning" he had arrived at his figures on this land. He did not state, however, the nature of the land 20 miles from Houston, nor does it appear that he stated any prices which were asked for any such lands.

When the discussion reached that part of the testimony concerning the costs of the improvements, Mrs. Reed said that she, not knowing anything about the cost of sewers and streets, remarked, "take it over; I can't help you on this, but remember the taxpayers are paying for it." These were casual remarks, she said, and, as she recalled, "They laughed at me; a woman's way of figuring things."

The other juror who testified, Mr. Walter Van Sickle, stated that the jury deliberated between 2 and 3 hours on the one issue submitted, and in relating the discussion in the jury room concerning the closing argument of Noyl Corporation's attorney one juror said that "The man really did not want to part with the land; the Noyl Corporation would prefer there was no school there." Another juror remarked

that he thought that was not true because he felt the school would benefit the sub-division and therefore he thought that part of the closing argument perhaps would have to be weighed heavier than otherwise. Mr. Van Sickle also recalled that in connection with the closing argument Mrs. Reed said she felt that the subdivision would benefit in having the school there, but he did not remember anyone saying it would be of value to the remainder of the subdivision. Neither did he remember any statement being made of the price of any land some 20 miles away. Nor did he recall any juror making a statement that the land would have to be paid for by the taxpayers.

He testified that he had built a few houses on "a part time basis" and while the cost of paving was being discussed he said that the cost of concrete for a slab of average size was $600.

■ Ordinarily whether or not misconduct occurred is a question of fact to be determined by the trial court. Rule 327, Texas Rules of Civil Procedure; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. Such findings by the trial court are binding on a reviewing court. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62; Texas Employers' Ins. Ass'n v. Hicks, Tex.Civ.App., 237 S.W.2d 699, ref., n. r. e. In the absence of findings of fact, it will be presumed that the trial court made such findings as to support its judgment. Texas Employers' Ins. Ass'n v. Hicks, supra; Balque v. Green, Tex.Civ.App., 193 S.W.2d 705, ref., n. r. e.; and Rosamond v. Keyes, Tex.Civ.App., 255 S.W.2d 399, ref., n. r. e.

■ Referring to the statement of Mrs. Reed, made when the jury entered into a discussion of the costs of sewers and paving in which she said, "Take it over; I can't help you on this, but remember the taxpayers are paying for it," which provoked the comment from the jurors that it was "a woman's way of figuring things" constituting misconduct, we are of the opinion that this was only a light and humorous remark which neither advised the other jurors of any fact which they did not know nor committed her to be bound by any finding that the other jurors might reach. The remark, in our opinion was inconsequential.

■■ Neither can we find any misconduct in juror Parks' comment that he had been pricing land within 20 or 30 miles of Houston and he had arrived at his figure by reason thereof, it not having been shown that he stated any such prices to the other jurors or discussed with them any other such tracts. It is well settled that in the absence of overt acts of misconduct it is not permissible to probe the minds of jurors to supervise their process of reasoning. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028,

■ Nor, in our opinion, was there any misconduct committed by the juror, Van Sickle, in stating that the cost of concrete in a slab for a house was $600. There was no size, thickness or quantity mentioned. He made the statement, so he testified, to show that concrete is expensive, although it appears that its application would be at best very vague and indefinite. Moreover, there was no showing by appellants that the comment was in anywise inconsistent with their testimony on paving costs. Under such circumstances where it is not shown that the juror's statement had any influence on the verdict, misconduct is not established. Galan v. Luna, Tex.Civ.App., 103 S.W.2d 844.

■ The remaining jury misconduct asserted by appellants is that the jury discussed that the placing of the school on the subject tract would enhance the value of the remaining land. In this connection, it appears that during the deliberations a discussion arose concerning that part of the closing argument of appellants' counsel in which he was quoted as having said, "that the school was coming in to take the land from the corporation * * * technically coming in and forcing the land

from" appellants. The remark suggested that the taking of the land forcibly and against appellants' wishes was significant and the testimony shows that this gave the jury some concern. However, upon examining the map offered in evidence by appellants, they saw that the location of the school on the subdivided tract in issue had been contemplated by a notation on the map. It was only in connection with this discussion as to whether or not appellants "wanted" the school that Mrs. Reed made the statement that appellants did want a school and apparently in support of that conclusion she made a general observation that it would benefit the remaining land. That was the extent of the discussion. No mention appears to have been made of the amount of any enhancement in value nor any amount which would be allocable to appellants' property as distinguished from the lots in the immediate vicinity which the proof showed had been sold to third persons; nor is there any proof whatever that the jury ever took any such matter into consideration in arriving at the reasonable market value of the 8.205-acre tract in issue.

■ The burden rests upon the party complaining of jury misconduct as a ground for new trial not only to show by a preponderance of the evidence that misconduct probably occurred, but also that it was material and that it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole, that injury probably resulted to the complaining party. Rule 327, T.R.C.P.; Barrington v. Duncan, supra; Texas Employers' Ins. Ass'n v. Tate, Tex.Civ.App., 214 S.W.2d 877, ref., n. r. e. We are of the opinion that in this case appellants have failed to show any misconduct on the part of the jury which was either material or probably resulted in injury to them. Singleton v. Carmichael, Tex.Civ.App., 305 S.W.2d 379, ref., n. r. e. Neither, in our opinion, did the accumulation of these alleged acts of misconduct

by the jury amount to misconduct warranting a reversal of the judgment. Walker v. Thompson, Tex.Civ.App., 287 S.W.2d 556, ref., n. r. e.

Appellants' Point One is, accordingly, overruled.

■ Appellants' second point of error is that the trial court erred in making a comment on the weight to be given appellants' Exhibit 8 in ruling upon the admissibility of certain evidence. Appellee contends that the statement of the court was not a comment on the weight of the evidence but only an explanation of a ruling and, moreover, appellants made no objection to the remark nor did they request the court to instruct the jury to disregard it and, consequently, if there was any error it was waived.

Pursuant to their theory of proving market value, appellants offered in evidence their Exhibit 8, which purported to show a theoretical subdivision of the 8.205-acre tract in question. By this approach it was necessary for a witness to give various estimates of cost to convert the tract into lots laid out according to this exhibit. Numerous objections were made to the materiality of this testimony and especially in the estimate of costs, except as of March 29, 1957, the date of the taking of the land.

In the ninth question, after Exhibit 8 had been admitted in evidence, the witness was asked to give his opinion of the cost as of March 29, 1957, to have this tract converted into a subdivision. Again an objection was made by appellee's counsel to the admissibility of such testimony as not being "the proper element." In ruling on this objection the court said, "I think it is a proper objection; it was not there at the time; it is speculative."

Serious doubt is entertained that this ruling can be construed as a comment by the court on the evidential weight which should be given to appellants' Exhibit 8. However, no objection or exception hav-

ing been reserved by appellants, they waived any such error, it not being the type of comment which an instruction could not have cured. Burgess v. Sylvester, Tex.Civ.App., 177 S.W.2d 271, affirmed 143 Tex. 25, 182 S.W.2d 358; Loumparoff v. Housing Authority of City of Dallas, Tex.Civ.App., 261 S.W.2d 224. Appellants' Second Point is, therefore, overruled.

The judgment of the trial court is affirmed.