James JOHNSON, Appellant,

v.

Raymond SMITH et al., Appellees.

No. 14804.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 15, 1969.

Rehearing Denied Nov. 12, 1969.

Taylor & Taylor, San Antonio, for appellant.

William A. Badders, Nacogdoches, Lieck, Lieck & Leon, San Antonio, for appellees.

BARROW, Chief Justice.

Appellees, Raymond Smith and wife, Jean Smith, and Willie Mora, brought this suit against appellant, James Johnson, to recover damages for personal injuries sustained by Jean Smith and Willie Mora in a rear-end collision. Judgment was entered on a jury verdict [1] whereby appellees

1. The jury returned a verdict substantially as follows:
Issues Nos. 1–10 established liability of appellant.

No. 11 awarded $5,200 damages to Mrs. Jean Smith for pain and suffering, loss of physical capacity and for lost value of household services.

Smith recovered the sum of $6,200, and appellee Mora recovered the sum of $3,000.

Appellant asserts four points of error on this appeal. His first point complains of improper jury argument whereby appellees' attorney criticized appellant's attorney for not calling several persons as witnesses, to-wit, appellant, the three passengers in his automobile, and two eye-witnesses to the accident. Appellant's other three points assert jury misconduct in discussing attorney's fees of appellees, liability insurance of appellant, and the effects of a back injury sustained by a juror.

The accident occurred about 8:00 p. m. on February 6, 1966, when the automobile operated by appellant ran into the rear of the automobile occupied by appellees while it was stopped behind another vehicle pursuant to a red traffic signal. No real dispute was urged as to liability in the trial court; rather, the controversy related to the extent of the injuries and damages sustained by appellees. Appellant presented no medical witness, but urged that the appellees' vehicle was struck only a slight blow and that Mrs. Smith and Mora had sustained little, if any, injury.

The uncontradicted evidence is that after the police had completed investigation of the accident Mrs. Smith was driven to Brooke General Hospital by her service-man husband, because of complaints of nausea and pain in her neck and head. She was there examined, X rays were made, and she was given medication. This was on a Saturday night, and the following Monday morning Mrs. Smith was taken to the Brooke Air Force dispensary, which was the duty station of appellee Smith. She was again examined, given medication, and urged to use ice packs on her neck. After several such visits to this dispensary, Mrs. Smith went to Dr. Metzner, on recommendation of a neighbor and with the concurrence of her attorney. Dr. Metzner gave her twenty-one trigger shots of cortisone on this first visit and prescribed an extensive course of physical therapy. Dr. Metzner testified that Mrs. Smith had sustained a neck and upper back injury involving nerve root compression. She continued under his treatment with emphasis on physical therapy between February 21 and May 2, 1966. At this time she had become free of symptoms and had apparently recovered. However, Dr. Metzner said such prognosis must be guarded.

In May, 1966, Mr. Smith was transferred overseas and Mrs. Smith returned to the home of her mother in Nacogdoches, Texas. Her condition got worse during such move and she again began experiencing sharp neck pains and headaches. She was treated by Dr. Mahon of Jacksonville, Texas, from July, 1966, until June, 1967, when her husband was transferred to Barksdale Air Force Base in Shreveport, Louisiana, and Mrs. Smith joined him at such duty station. Dr. Mahon testified that Mrs. Smith had muscle spasm, pain and tenderness in the muscles of her neck and right shoulder and that such condition was permanent. At the time of the trial she was still experiencing pain and taking medication prescribed by the clinic at Barksdale Air Force Base. She testified that she had been unable to do all her regular household work and that other normal physical activities, such as yard work, bowling and dancing had been restricted. Her husband testified that such injuries had adversely affected her personality. Her medical expenses to date of trial were approximately $500, and Dr. Mahon estimated future treatment would cost about $25.00 per month.

Mr. Mora, uncle of Mrs. Smith, testified that his neck was popped in the collision, however, he did not see a doctor until he

No. 12 awarded $1,000 damages for past and future medical expenses of Mrs. Jean Smith.
No. 13 awarded $2,500 to Willie Mora for pain and suffering, loss of physical capacity and lost earnings.
No. 14 awarded $500 to Willie Mora for past and future medical expenses.

returned to his home in Nacogdoches the following Monday. He saw his family doctor, Dr. Coussons, about sixteen or seventeen times, and testified that he still had paid in his neck and right shoulder. At the request of his attorney, Mora had gone to Dr. Mann in Henderson. Dr. Coussons did not testify, but Dr. Mann testified that he had seen Mora about fifteen times and diagnosed his condition as a cervical strain and traumatic right shoulder bursitis. He testified that the condition was permanent. Mora was a taxicab driver by occupation and testified that the injuries required him to work limited hours and reduced his earnings over $1,000 a year. Dr. Mann's medical bill was $218, and he estimated Mora would require future medical attention at a cost of $20.00 to $25.00 per month.

Appellant was not present at the trial and, according to the motion for continuance filed in his behalf by his attorney, his whereabouts were unknown. Appellant was an enlisted man in the U. S. Army, attached to the medical branch at the time of the accident, and he was accompanied by John Madison who had a similar type duty. Appellees, by written interrogatories, requested a list of witnesses to the accident, and appellant answered that Madison was a witness and was then stationed in Germany. Although, according to appellees, two women were also in the car with appellant, their names or addresses were not given. Two soldiers were on a corner at the time of the accident, and appellees testified that the soldiers gave their names to all parties. During the opening and closing arguments of appellees' attorney, reference was made to appellant's failure to call any witnesses to the accident, including a specific reference to the "two witnesses." Appellant objected to such argument on the grounds that it was not shown that said parties were under his control.

■ The rule in this State is that counsel is permitted to comment on the failure of his adversary to call a witness, and to conclude that such failure raises a presumption that the testimony, if produced, would be unfavorable. However, the absent witness must be under the control of, or standing in some relation to, the opponent, and the absent witness must have obtained, or was clearly in a position to obtain, material information on the point in issue. Gulf, Colordao & Santa Fe RR. Co. v. Parmer, 389 S.W.2d 558 (Tex.Civ.App.—Beaumont 1965, writ ref'd n. r. e.); St. Paul Mercury Insurance Co. v. Jackman, 331 S.W.2d 253 (Tex.Civ.App.—Eastland 1960, writ ref'd n. r. e.); Texas Employers' Ins. Ass'n v. Hicks, 237 S.W.2d 699 (Tex.Civ.App.—Amarillo 1951, writ ref'd n. r. e.).

■ Clearly, it was improper for appellees' attorney to comment on the failure of appellant to call the two disinterested eye-witnesses, in that the evidence showed that their names were given to both parties and therefore they were equally available. However, reversible error is not shown by such improper argument, assuming that same was properly preserved. Liability was virtually undisputed. Appellant urges harm in that appellees argued to the jury that such witnesses could have been called to refute the force of the blow. It is seen that the police officer who was called by appellees testified that there were no skid marks, and that the front car was not knocked forward. Furthermore, Sgt. Smith testified the cost of repairs were estimated at from $60.00 to $70.00, which would not indicate any great blow. It would be apparent to the jury, as stated by appellant's attorney in his objection, that these two witnesses were equally available to appellees. On the other hand, it would be much more significant to the jury that appellant did not testify. We cannot say from this record that reversible error has been shown by such improper comment on appellant's failure to call such disinterested witnesses. Rule 434, Texas Rules of Civil Procedure.

Nine of the twelve jurors testified on motion for new trial relative to appellant's complaint of jury misconduct. Although no findings of fact or conclusions of law

were filed relative thereto, the evidence is virtually undisputed that appellees attorney's fees and appellant's liability insurance were mentioned during the jury's deliberations. In fact, an affidavit signed by most of the jurors at the request of an investigator employed by appellees, conceded that such matters were mentioned. There was a vigorous conflict in the testimony as to the number of times and manner such matters were mentioned. Unfortunately, the jurors, as often occurs in such situations, became advocates at this stage of the proceeding, and the testimony of each was apparently colored somewhat by his or her personal feelings regarding the merits of the lawsuit. That is, the jurors who were for appellees in the jury room heard no mention, or only casual mention of the improper items, whereas two jurors who were for giving appellees little or nothing as damages testified that insurance was mentioned three times. This advocacy is illustrated by the action of the foreman in aiding appellees to secure a counter-affidavit to the asserted jury misconduct.

The record is undisputed that the jurors deliberated on their verdict about four hours, most of which time was spent on the four damage issues. The issues relating to the amount of medical expenses necessary for Mrs. Smith and Mora, as well as the amount of damages to be awarded Mora, were agreed upon without too much difficulty. There was a wide difference of opinion on the damages for Mrs. Smith, with the first preliminary ballot showing a range of between zero and $20,000. Because of these conflicting views, considerable discussion and compromise took place before the jury finally agreed on the sum of $5,200.

There is complete agreement among all juror-witnesses that every mention of attorney's fees and liability insurance was followed by a prompt rebuke to the effect that such possible facts had nothing to do with the lawsuit. Even the juror Weigand, who was obviously very favorable to appellant, testified that the subject of insurance was dropped after the foreman was rebuked for speculating as to whether or not appellant as a serviceman was required to carry liability insurance. Seven of the jurors testified that same was only casually mentioned and dropped promptly after the rebuke. Furthermore, the uncontroverted testimony shows agreement by all jurors on said compromised sum.

■ Appellant had the burden to prove an overt act of jury misconduct, that it was material misconduct, and, from the record as a whole, that injury probably resulted. Fountain v. Ferguson, 441 S.W.2d 506 (Tex.Sup.1969); Pope, Jury Misconduct and Harm, XII Baylor Law Review 355–357. It is our opinion from an examination of the entire record, that appellant did not discharge his burden of proving probable harm.

■ It is seen from the jury arguments that appellant's attorney did not question liability or that Mrs. Smith had sustained an injury. Such attorney recognized that she had sustained medical expense of about $500, and suggested a verdict of perhaps $500 to $1,000 for her other damages. Furthermore, the uncontradicted medical testimony of the two doctors who testified on behalf of Mrs. Smith was that she had sustained an injury to her neck and shoulder muscles which was painful. There was medical testimony that such injury had resulted in permanent disability. Under the uncontradicted testimony, her activities had been greatly restricted following the accident. Her attorney vigorously asserted, by argument, that she was entitled to the full $20,000 sued for by her, and apologized to her for not suing for more. Under this record, and particularly in view of the uncontradicted rebuke of every mention of attorney's fees or liability insurance, we do not believe that such misconduct probably caused the rendition of an improper judgment in this cause. The trial court did not err in refusing to grant a new trial on the ground of jury misconduct. See Dennis v. Hulse, 362 S.W.2d 308 (Tex.Sup.1962);

Rash v. Ross, 371 S.W.2d 109 (Tex.Civ. App.—San Antonio 1963, writ ref'd n. r. e.); Pope, Jury Misconduct and Harm, supra, 366.

The judgment is affirmed.