## MARYLAND CASUALTY CO. v. HEARKS.

### No. 4292.

Court of Civil Appeals of Texas. Beaumont.
April 26, 1945.

Rehearing Denied May 23, 1945.

Smith, Smith & Boyd, of Beaumont, for appellant.

D. F. Sanders and D. L. Broadus, both of Beaumont, for appellee.

MURRAY, Justice.

This is a workman's compensation case, in which Richard Hearks, an employee of the Lummus Company, won an award for the specific injury of loss of vision of his right eye against Maryland Casualty Company, the insurance carrier. Hearks was 62 years old at the time of the trial, and was employed on a construction job to clean up the premises and carry away chips and scraps of lumber where carpenters were working. He alleged in his suit and testified as a witness for himself that while he was thus engaged he carried a bag of trash to the side of a road where other workmen on the same job were hauling heavy loads of mixed gravel in trucks, and that while he was standing by the side of this road a truck went by and threw up a piece of rock or gravel which struck him in the right eye and injured it. The eye was treated at the company's first aid station, and later it was removed by surgeons. The insurance company defended by general denial and also specially plead-

ed that prior to the date of the alleged accident, Hearks had suffered the loss of vision in his right eye and he was blind in such eye prior to the date of the alleged accident. Upon a jury's verdict favorable to the claimant, judgment was rendered for him against the insurer for compensation for 100 weeks at $20 per week, for the specific loss, from which judgment and the order overruling its motion for new trial the insurer has perfected its appeal.

The appellant by its points number one to seven, inclusive, and in points number fourteen and fifteen, attacks the sufficiency of the evidence to show that appellee lost the vision of his right eye because of its being struck by a piece of rock or gravel thrown by a truck. It says the trial court committed error in overruling its motion for instructed verdict; in refusing it a new trial on its assignment that the jury's finding in its verdict that Hearks sustained the total loss of the vision of his eye on the date of the alleged accident was without support in the evidence; in refusing it a new trial on its assignment that such a finding by the jury was against the overwhelming weight and preponderance of the evidence, so as to indicate bias or prejudice or some other improper motive; in refusing it a new trial on its assignment that the jury's finding in its verdict that the injury to claimant's eye resulting from being struck by a piece of rock or gravel thrown by a truck on the date of the alleged accident was the producing cause of the loss of the sight of his eye, was without support in the evidence; in refusing it a new trial on its assignment that such finding by the jury was against the overwhelming weight and preponderance of the evidence, so as to indicate bias, or other improper motive; in refusing it a new trial on its assignment that the jury's finding in its verdict that Hearks had not suffered the loss of vision in his right eye prior to the date of the alleged accident, was without support in the evidence; in refusing it a new trial on its assignment that such finding by the jury was against the overwhelming weight and preponderance of the evidence, so as to indicate bias or some other improper motive. An examination of the testimony is necessary in order to dispose of all these points and for that reason they will be discussed together, as was done in the briefs of both parties.

 Hearks himself testified that on May 4, 1943, while working for the Lum-

mus Company at Port Neches on a construction job, a passing truck threw a rock or piece of gravel which struck him in the right eye and knocked him to the ground; that he reported the matter to his foreman and was sent to the first aid station where his eye was dressed by a nurse and he was sent home; that some two days later he was examined by Dr. Lyons, an eye specialist; he suffered great pain with his eye and after being under treatment for several weeks another doctor treated him and then removed his right eye. He testified that prior to the time of the accident he had had no trouble with his right eye and had good vision in it, that it was not inflamed or cloudy and did not appear to be diseased in any way. Two white men of his home town in Louisiana also testified that they had known Hearks for many years and that his right eye was apparently normal when they knew him. The doctor who removed Hearks' eye testified that after removing the eye he and two other doctors in consultation with him found that the sac of the eye ball was punctured, which, in his opinion, was caused by trauma and probably resulted from a blow in the eye by some hard substance. Other witnesses testified to seeing Hearks with his eye bandaged in the days immediately after the accident. A negro water boy on the job with Hearks testified that he saw Hearks going to the first aid station, holding his hand over his right eye. The foreman, Mr. Newton, testified on direct examination that Hearks never came to him and told him about being knocked to the ground or hit in the eye by a piece of gravel; that at some time prior to the accident Hearks stated to the witness that "his eye was out." On cross-examination, however, Mr. Newton was not so positive in his testimony, stating that he might have sent Hearks to the first aid station, that he had a great many men working in the gang under him and he could not remember many details about such things; that it is possible that Hearks came up to him with his hand over his right eye and he gave him a slip and sent him to the first aid station. Dr. Hines, a witness for the insurance company, testified on direct examination that he had examined Hearks generally before he went to work for the Lummus Company and that his right eye was blind. On cross-examination, however, it developed that the witness had examined a great many men in pre-employment physi-

cal examinations, some times examining as many as 150 in one day; that the eye examination he gave was to present the customary lettered card and when the applicant for employment stated he could not see letters on the chart in one eye he wrote him up in his report as being blind in that eye. The witness on the stand remembered no details as to the appearance of the eye or its condition. Dr. Lyons, the eye specialist who examined Hearks on May 6th, the second day after the accident, testified that he found a cataract formation in Hearks' right eye, that there was no vision in the eye and in his opinion the condition was chronic; that the eye, in his opinion, had not received any traumatic injury. There was a considerable amount of other testimony pro and con on the main issue of fact as to whether Hearks had lost the vision of his right eye by the accident to which he testified. The above summary however is sufficient to show that a fact issue was raised by the testimony sufficient to support a jury's finding, either in affirmative or negative, on all the issues submitted to the jury. Findings of fact when supported by competent evidence will not be disturbed on appeal. The testimony of the medical experts who testified for the insurance company, although persuasive and entitled to consideration as expert testimony, is not conclusive. Simmonds v. St. Louis, B. & M. Railway Co., 127 Tex. 23, 91 S.W.2d 332; Metropolitan Life Insurance Co. v. Funderburk, Tex.Civ.App., 81 S.W.2d 132; Texas Life Insurance Co. v. Hatch et al., Tex.Civ.App., 167 S.W.2d 802.

By its eighth, ninth, tenth, eleventh, twelfth and thirteenth points, appellant presents the question of jury misconduct and complains of certain actions of the trial court in the hearing at which the testimony thereon was presented. The appellant takes the position that the answers of the jury to the special issues submitted to it by the court were so greatly against the overwhelming preponderance of the evidence as to indicate passion or prejudice or some other improper motive on the part of the jury in making its findings of fact as reported in its verdict. It maintains that the evidence of misconduct by the jury strengthens this proposition. The appellant presented its amended motion for a new trial, alleging that the members of the jury had in their deliberation on the case

considered personal views and information not received in evidence at the trial; that some of them stated in the beginning of their deliberations that the issues should be answered in a certain way in order that the plaintiff might recover. To the amended motion for a new trial the affidavits of three of the jurors in the case were attached. When the juror Edgerton testified he declined to testify to the truth of the matter set out in his affidavit which was attached to the amended motion for a new trial. He said that he could not recall what statements were made and what discussions were had in the jury room. His testimony was of no value to the appellant in the effort to establish misconduct on the part of the jury. The witness Sonnier, one of the jurors in the case, testified that there was a statement in the jury room that one or more of the issues would have to be answered in a certain way "if the old negro was to get anything"; that during the deliberations of the jury there was a recounting or stating by a juror as to his personal experiences, or expressions of members of his family, about what they knew about eye conditions and trouble with the eyes; that it was mentioned in the jury room that one could not tell whether or not a man was blind in one eye. He further testified that he and the other jurors tried to follow the court's charge and reached their verdict on the evidence heard in the case and nothing else; that they answered each question according to the weight of the testimony and without regard to whether Hearks was going to get any money or not. The witness Berwick, one of the jurors, testified that before a verdict was reached in the deliberations there was a discussion or statement made by a juror that if the old negro was going to get any money they would have to answer the issues in a certain way; that the issues were answered in such a way that the old negro would get some sort of recovery. He further testified that they did not disregard the facts in the case and make their answers to the issues in such a way that Hearks would get some money; that they took the witnesses' testimony and determined from the testimony that Hearks got hit in the right eye and answered each question from the evidence, and regardless of whether Hearks would win or lose.

The trial court heard the testimony on the question of misconduct of the jury and

# 266

thereafter filed his findings of fact and conclusions of law thereon, as follows:

"1. I find as a fact that the jury did not receive any evidence from the lips of other jurors after the jury retired to deliberate on its verdict.

"2. The evidence does not show that any juror set himself up as an expert, or that any juror gave any opinion which purported to be that of an expert, with reference to any issues under consideration by the jury.

"3. I find as a fact that the jurors did not, before answering the issues in the case, agree, or determine that they were going to answer them so that the plaintiff would win a verdict, but find the facts to be that the jurors answered each and every question solely upon a preponderance of the testimony heard from the witness stand.

"4. I find that in answering the special issues submitted, the jurors did so without regard to the effect that their answers might have on the outcome of the case, and that they based their answers on the testimony heard from the witness stand.

"5. If the court should be mistaken in any of the conclusion of facts found above then the court finds as a further fact that it does not appear from the evidence on the whole case that any injury resulted to the defendant by reason of any conduct on the part of the jury.

"Conclusions of Law

"I conclude that as a matter of law that there was no jury misconduct in this cause.

"W. Tom Kenna
"Judge of the 60th District Court."

The testimony presented a fact question for the trial court to determine. The trial court found that the matters alleged by the appellant in its amended motion for new trial had not occurred. On the authority of Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S.W. 606; Kindle v. Armstrong Packing Co., Tex.Civ. App., 103 S.W.2d 471, 474; Tumlinson v. San Antonio Brewing Ass'n, Tex.Civ.App., 170 S.W.2d 620; Whitham & Co. v. Craddock, Tex.Civ.App., 107 S.W.2d 761; Wohlford v. T. & N. O. Ry. Co., Tex.Civ.App., 128 S.W.2d 449 and Peacock v. M.-K.-T. Ry. Co., Tex.Civ.App., 148 S.W.2d 250, the contentions of the appellant in regard to alleged misconduct are overruled.

On the hearing on motion for new trial, appellant called the juror Edgerton as a witness and after he testified in effect that he did not recall what had happened in the jury room, appellant offered the affidavit of the juror in an apparent effort to impeach his testimony. The trial court sustained objection to its reception in the evidence. The same procedure took place as to the juror Sonnier, whose affidavit was offered in evidence by the appellant. The appellant cites no authority for its statement that in the light of the record and the attitude of the witness, the court should have permitted the affidavits to go into the evidence. The appellee contends that the trial court was correct in its actions and relies upon Commercial Standard Ins. Co. v. Miller, Tex.Com.App., 48 S. W.2d 618, 620. The pronouncement relied upon from that case is as follows: "It has long been the established rule in this state that affidavits of jurors shall not be received to impeach their verdict. This rule is firmly based upon the wisdom and experience of our jurisprudence and has been recognized by the courts of this state from the very beginning of its history" (Citing authorities). The court further stated: "If a state of facts should exist that would justify the trial court inquiring into a verdict rendered by a jury, it should be done in open court where all parties may see and hear the witnesses and not by affidavits obtained from jurors." As we view the law in this respect, it is proper and necessary that a litigant desiring to inquire into the facts regarding a jury's conduct should secure and attach to his motion for a new trial affidavits of jurors. This is to assure the trial court that the motion is based on the probable existence of facts which, if proved by competent testimony, would authorize the trial court to find that misconduct had actually occurred. We do not believe a juror's affidavit can properly be used to impeach his testimony under the circumstances here presented. The trial court did not err in excluding from the evidence the affidavits of the jurors.

On the trial of the case, Dr. J. C. Hines, a physician, testified that he had examined Hearks for employment at the Lummus Company. He testified that he had found him blind in the right eye, that he had examined many men on different days. He had before him the record which he made at the time of the examination of Hearks and used it to refresh his memory as to what he found at that time. At the conclusion of his testimony, the appellant

offered in evidence the doctor's record of his examination, which he had before him during his testimony. The court excluded the instrument upon objection and the appellant now maintains that this was error. We do not believe any error is shown. The doctor who had made the examination of the man, and had made or directed the making of the record itself, was present in court, was on the witness stand, and any fact contained in the written report could then have been inquired about by counsel for the appellant. There was no controversy over the authenticity of the record itself, no suggestion had been made that any portion of the record had been changed, and the manner in which the doctor had arrived at the facts which he included in this report was fully developed by the testimony of the doctor himself. We do not believe the trial court abused his discretion in excluding the instrument from the evidence.

By its sixteenth point, the appellant complains of the action of the trial court in the wording of the special issues contained in the charge in conditioning the submission of the issues on an affirmative answer to the immediate preceding issue. It says that this amounted to a suggestion by the court to the jury that the various preceding issues likely would be, had been, or should be answered "Yes." The appellant in its brief suggests that this court should disapprove this type of submission of issues and declare that the court rules which require a fair and separate submission of issues "is no mere rigmarole." On the authority of the cases of Gray v. Adolph, Tex.Civ.App. 117 S.W.2d 122, and Perkins v. Nevill, Tex.Com.App., 58 S.W. 2d 50, we overrule this contention of the appellant.

Special issue number five, submitted by the court, read as follows: "Do you find from a preponderance of the evidence that the plaintiff Richard Hearks sustained the total loss of the sight of his right eye (if any vision he had) on or about the 4th day of May, 1943? Answer 'Yes' or 'No.'" The appellant's objection to this issue was that it was on the weight of the evidence and assumes that he had some vision in that there is inserted in the middle of the inquiry, in parenthesis, these words: "if any vision he had," and such issue in form submitted will cause or tend to cause the jury to believe that it is a fact proved or that the court is of the opinion that Rich-

ard Hearks did, or probably did, have some vision on the date inquired about. We do not believe the wording of the issue is subject to the objection made. The phrase, "if any vision he had," would be more subject to the construction that it tended to and did instruct the jury that whether or not the claimant did have vision in his right eye prior to the date inquired about was a disputed issue of fact. It appears to have been necessary to insert this phrase, or some similar conditional phrase, into the wording of the issue in order that the special issue might not be subject to the objection that the court assumed that there was some vision in the eye and that the issue was therefore on the weight of the evidence.

The deposition of Hearks was taken some time prior to the date of the trial and he was asked whether he had been given a physical examination when he went to work for another firm in Louisiana before he went to work for the Lummus Company. He answered he could not be hired without being looked at on Government work. He was asked whether a doctor looked at him and he answered that he did not know who it was. He was asked again whether a doctor examined him and he answered, "they examined me but I don't know who it was. I don't know his name—they wouldn't hire me without looking at me." After the trial, the appellant learned by correspondence with his former employers that Hearks did not have a pre-employment examination by a physician when he began work on the job in Louisiana. The appellant maintains it was thus misled by such testimony by the claimant and had it known of the facts it could and would have produced at the trial evidence of the fact that Hearks had undergone no physical examination by a physician in connection with his employment in Louisiana before his employment by the Lummus Company. The deposition was taken in January, 1944, a trial was had in September, 1944, and some reference is made to a trial between those two dates which for some reason did not result in a final judgment. We find no merit in the appellant's contention that this situation presented ground for granting it a new trial.

In its nineteenth and twentieth points the appellant complains of the action of the trial court in submitting to the jury special issue No. 3, which inquired whether Hearks suffered an injury to his right

268

eye when same was struck by gravel on the date inquired about. It also complains of special issue No. 4, which inquired whether the injury, if any, to Hearks' right eye was an accidental injury. It maintains that the submission of these issues was error in that the claimant had announced at the close of the testimony that he would rely in his suit solely on loss of sight and not for general injury. It says that the submission of such issues to the jury after Hearks had abandoned his suit for a general injury was improper because the true issue before the court and jury was whether Hearks had suffered the loss of the sight of his eye. We believe the issues were properly submitted and were not subject to the objections made by the appellant.

The judgment of the trial court is affirmed.