MARYLAND CASUALTY COMPANY V. RICHARD HEARKS.

No. A-627. Decided October 31, 1945.
Rehearing overruled November 28, 1945.
(190 S. W., 2d Series, 62.)

318

*Smith, Smith & Boyd,* of Beaumont, for petitioner.

The Court of Civil Appeals erred in holding that there was no misconduct of the jury and in overruling appellant's contentions regarding same. Barrington v. Duncan, 140 Texas 510; 169 S. W. (2d) 462; Akers v. Epperson, 141 Texas 189, 171 S. W. (2d) 483; Lincoln v. Stone, 59 S. W. (2d) 100.

*D. F. Sanders* and *David L. Broadus,* both of Beaumont, for respondent.

There was ample evidence to support the court's finding of fact and conclusions of law that there was no material misconduct of the jury shown. Mitchell v. Gibson, 160 S. W. (2d) 79; Sproles Motor Freight Lines v. Juge, 123 S. W. (2d) 919; Craighead v. United Transport, 170 S. W. (2d) 325.

Mr. Chief Justice Alexander delivered the opinion of the Court.

This is a workmen's compensation case in which the employee recovered for loss of sight in his right eye. The Court of Civil Appeals affirmed the judgment of the trial court. 188 S. W. (2d) 262. This Court granted a writ of error on assignments charging misconduct of the jury.

It is contended, in effect, that during the jury's deliberations one of the jurors set himself up as an expert and imparted new and additional evidence to the jury.

There was a conflict in the evidence upon the trial on the merits as to whether the employee was blind in his right eye when he went to work for the employer or whether he lost the sight in that eye as the result of an injury received in the course of his employment. The employee testified that a passing truck caused a loose gravel to strike him in his eye; that he went immediately to the company nurse for first aid treatment; and that a short time thereafter he had to have his eye removed as a result of the injury. Dr. Byrd, the doctor who treated and removed the employee's eye, testified at the trial that in his opinion the condition he found in the employee's eye was caused by a blow rather than disease. Dr. Lyons, a specialist who examined the eye two days after the injury was supposed to have occurred, testified that he found no evidence of a recent injury, but that he found a cataract formation and a chronic inflammation process going on and that the eye was "out." Dr. Hines was the examining physician who examined all employees when they went to work for the employer. He testified, in substance, that the examination which he made of this particular employee consisted of asking him if he could read certain letters on a chart which was several feet away from the employee, and when the employee answered that he could not the doctor wrote "blind" on his report. The doctor did not state that he had looked at the employee's eye. He was unable to state whether the eye was red, inflamed, cloudy, or clear at the time.

On the motion for new trial only two jurors testified on the issue here involved. One of them, when asked whether he discussed his personal experiences while the jury was deliberating, testified as follows: "Q. Did you discuss on that point your personal experience * * * about whether a man might be able to see or might not be able to see those letters at that distance that Dr. Hines had told about?" "A. Well, we discussed such a thing with one another—that is the jury, you know. You can't serve without * * *." "Q. Did you tell about that (having his eyes tested) in the jury room when you were considering your verdict?" "A. Well, I won't say I did and won't say I didn't." "Q. Did you give your personal experiences as to what you knew about eyesight and a man being able to see a chart at that distance?" "A. Well, I got up and said something, but I don't know exactly. I couldn't recall exactly the words." The other juror, after being asked if the jury discussed the issue as to whether you could tell whether a man was blind by having him look at a chart, such as was used by Dr. Hines, testified as follows: "A. Well, it was mentioned that you couldn't tell whether or not a man was blind in one eye." "Q. Was there any discussion as to

charts, as to whether a chart or letters on a chart would be determinative to that?" "A. Yes, we discussed that, about you couldn't tell whether a man could see say six or eight feet from him or twenty feet and so forth and so on." "Q. Was there any particular discussion as to whether the test shown by Dr. Hines in this case, that chart at the distance he showed him would or not be determinative, whether a man had eyesight or not, do you recall whether such discussion as that was had?" "A. It could have been, but I don't remember it."

■ It is a well-recognized rule that a juror who has special knowledge on a particular subject is not permitted to impart to the jury his expert opinion on material matters being considered by the jury in its deliberations. Lincoln v. Stone (Tex. Com. App.), 59 S. W. (2d) 100; City of Houston v. Quinones, 142 Texas 282, 177 S. W. (2d) 259.

■ However, we do not think the above rule was violated in this instance. The trial court found as follows:

"1. I find as a fact that the jury did not receive any evidence from the lips of other jurors after the jury retired to deliberate on its verdict.

"2. The evidence does not show that any juror set himself up as an expert, or that any juror gave any opinion which purported to be that of an expert, with reference to any issues under consideration by the jury."

Under the findings of the trial court we must resolve all conflicts in the evidence in favor of the validity of the verdict. It will be noted that the testimony given upon the motion for new trial is very vague as to what was discussed. Certainly there was no proof that any juror claimed to possess expert knowledge on the subject matter under discussion by the jury, nor was it established that any juror imparted to the jury his personal experience in any matter similar to that under discussion by the jury. When all conflicts in the testimony are resolved in favor of the verdict, it will be found that the statements made by the jurors amounted to nothing more than a layman's discussion of the weight to be given to the evidence before the jury. It was the mere assertion by the juror that in the light of his ordinary experience he did not believe that the test made by the examining physician at the time the employee went to work for the employer was sufficient to determine whether or not the employee was blind in one eye. This was legitimate.

■ Jurors in weighing the evidence before them have a right to use their common knowledge and experience in life. If the opinions of the experts as given in the evidence do not comport with the jurors' ideas of sound logic, the jurors have a right to say so. Otherwise there could not be a free discussion of the evidence in the jury room. Lewis v. Halbert (Tex. Civ. App.), 67 S. W. (2d) 430, par. 7; Blue Diamond Motor Bus Co. v. Hale (Tex. Civ. App.), 69 S. W. (2d) 228, par. 5 (writ dismissed); Akers v. Epperson, 141 Texas 189, 171 S. W. (2d) 483; 41 Tex. Jur. 852. This assignment is overruled.

It is further alleged that the jurors were guilty of misconduct in that they first determined that the employee should recover and then designedly undertook to answer the issues so as to accomplish that result.

Only two jurors testified on this issue. One of them testified that after the jury retired it was discussed that if the issues were not answered in a given way the employee would not recover. However, this juror did not testify that any effort was made to answer the issues so as to accomplish such a result. On the contrary, he testified that each issue was answered according to the evidence and without regard as to who would recover. The other juror testified on direct examination that the issues were answered as they were in order to effectuate the purpose of enabling the employee to recover, but on cross-examination this was denied, and the juror further testified that each issue was answered according to the evidence and without regard to the results. The trial court expressly found that the jurors did not agree in advance that they would answer the issues in a certain way so as to enable the employee to win. He further found that they did not undertake to carry out such a purpose, but that they answered each issue according to the evidence, and without regard to the results.

■ The inconsistency between the evidence given by the juror on direct examination and that given by him on cross-examination was resolved by the trial judge in favor of the validity of the verdict. The trial judge's finding on this issue is binding on this Court. Monkey Grip Rubber Co. v. Walton, 122 Texas 185, 53 S. W. (2d) 770, 773; Texas Employers' Ins. Assn. v. Chocolate Shop, Inc. (Tex. Com. App.), 44 S. W. (2d) 989; Booth v. H. P. Drought & Co. (Tex. Civ. App.), 89 S. W. (2d) 432 (writ dismissed); Davis v. Christmas (Tex. Civ. App.), 248 S. W. 126 (writ dismissed). We must assume, therefore, that while the jurors may have discussed in advance the fact that the issues

would have to be answered in a given way in order to enable the employees to recover, no effort was made to carry such a purpose into effect. We must further assume that the jury answered each issue in accordance with the evidence and without regard to the results.

■ The mere fact that the jurors discussed the fact that the issues would have to be answered in a given way if the employee was to recover is not alone sufficient to constitute misconduct of the jury. It must also appear that the jury designedly attempted to frame the answers to the issues so as to accomplish such a result. Waggoman v. Fort Worth Well Machinery & Supply Co., 124 Texas 325, 76 S. W. (2d) 1005; Monkey Grip Rubber Co. v. Walton, 122 Texas 185, 53 S. W. (2d) 770, 773; Booth v. H. P. Drought & Co. (Tex. Civ. App.), 89 S. W. (2d) 432 (writ dismissed) ; St. Louis, B. & M. Ry. Co. v. Cole (Tex. Com-App.), 16 S. W. (2d) 534; Texas Employers' Ins. Assn. v. Chocolate Shop, Inc. (Tex. Com. App.), 44 S. W. (2d) 989; Davis v. Christmas (Tex. Civ. App.), 248 S. W. 126 (writ dismissed).

There was no such misconduct in this case as to require a reversal. The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered October 31, 1945.

Rehearing overruled November 28, 1945.