## BIRMINGHAM et al. v. COLEMAN et al.
### No. 6584.

Court of Civil Appeals of Texas. Texarkana.
June 7, 1951.

Rehearing Denied June 28, 1951.

Jones, Jones & Brian, Marshall, Davis Bailey, Carthage, for appellants.

Lane & Anderson, Wardlow Lane, J. R. Anderson, Center, J. R. Duran, Carthage, for appellees.

WILLIAMS, Justice.

The jury found that Mrs. M. J. Coleman, deceased, did not have testamentary capacity at the time she executed the instrument dated August 11, 1947, that was offered for probate as her last will and testament. Upon this finding the application of Mrs. Epsie B. Birmingham, joined by her husband, for its probate and for letters testamentary was denied. Appellees, the contestants, are children and other heirs at law of Mrs. Coleman. Point one deals with alleged misconduct of the jury and the other point presented asserts that above jury finding was against the overwhelming weight and preponderance of the evidence.

Mrs. Coleman was between 70 and 75 years of age on February 4, 1948, the date of her death. In June, 1947, she suffered a stroke of paralysis, after which and until her death she was an invalid, unable to handle herself without assistance. A malaria and kidney trouble was also involved. She signed the purported will by mark. One of the subscribing witnesses assisted her in making the cross-mark. In this instrument, she purports to bequeath to seven children, each the sum of $10 and the remainder of her estate to her daughter Mrs. Epsie B. Birmingham, naming the latter as independent executrix. This instrument recites that Mrs. Birmingham had cared for deceased over a long period of time and that the bequest so made was in appreciation for such services.

An instrument dated January 15, 1943, which was introduced in evidence by contestants, purports to be the will of Mrs. Coleman as of that date, signed by her with two attesting witnesses. In this instrument Mrs. Coleman bequeathed $5 each to three members of her family and to five of her children and the children of a deceased daughter, each an undivided 1/6 of the remainder of her estate, and named Mrs. Birmingham as independent executrix.

J. G. Strong, a prominent attorney, drafted the 1943 instrument and was one of the subscribing witnesses to it. It was his testimony that Mrs. Coleman called at his office and the terms as expressed in the 1943 instrument were drawn in accordance to her expressed wishes at the time. Mrs. Birmingham secured the same attorney to draft the 1947 instrument. He did not see nor consult with Mrs. Coleman at that time. A son of Mrs. Birmingham transported the two subscribing witnesses in his automobile from their respective homes to Mrs. Cole-

man's home on the morning this instrument was executed. Mrs. Coleman and her children were abandoned by her husband some 25 years prior to her death. Thereafter three of her sons refinanced a $4,600 lien against the 276-acre home place and later paid same through rents and their labor. It appears that George, another son who was afflicted from youth, resided in the home for years and assisted with his labor and management of the farm towards the payment of the debt.

When the mother suffered this stroke, Mrs. Birmingham and the latter's family moved into the home, and she and Mrs. Jones, a practical nurse, nursed and cared for Mrs. Coleman to her death. Some of the evidence reflects that at least a part of the gas royalties and other income of Mrs. Coleman was used by Mrs. Birmingham for expenses during this period. Much evidence pro and con, deals with the mental condition of Mrs. Coleman and her physical situation during the latter years and months of her life, including the 24 hour period prior to the time deceased executed the instrument here involved. Much evidence deals pro and con with respect to her rational periods and the lapses in her mind. Other evidence deals with the acts and conduct of various members of the family towards each other and with deceased. The evidence above detailed when weighed by the well known rule as stated and discussed in 17 T.J. (Evidence in Civil Cases), Sec. 410, and the decisions cited in support of that rule will not warrant this reviewing court to disturb this jury finding, and the matters set up under point two are overruled. Galindo v. Garcia, Tex.Sup. 199 S.W.2d 499.

Appellants asserted in the motion for new trial with respect to alleged misconduct of the jury that there was a discussion in the jury room before a verdict was reached "to the effect that the case had been tried two or three times, and if the jury should hang and fail to make a verdict, there would be nothing left of the estate and the lawyer would get everything"; (2) a discussion "to the effect that Mrs. Birmingham had already re-ceived her part of the property including the house where Mrs. Coleman lived," and (3) a juror remarked in the jury room that it was one Judson Daniel who hung the jury on a former trial. The trial court after hearing the evidence presented under this motion overruled same.

This action of the trial court in refusing to grant a new trial on the evidence adduced in support of this alleged misconduct is sustained. The provisions of Rule 327, Texas Rules of Civil Procedure, applicable here, read: "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

The jury retired to consider their verdict shortly before noon. A verdict was reached around 3:30 P.M. The jurors were not in agreement whether the first ballot was taken before noon or shortly after they returned from lunch. The number of ballots taken is not disclosed. The first ballot stood nine to three or eight to four. The jury panel on voir dire examination had been informed of the two previous trials of the case. Cross-examination of certain witnesses further revealed such fact. The testimony adduced on the motion discloses that before a verdict was reached a juror, probably more than one, spoke out in the jury room with a comment that the case had been tried two or three times and unless they could reach a verdict the estate was going to be dissipated in court costs and attorney fees, or a comment substantially to this effect. It was within the province of the trial judge, the trier of the facts, to conclude from the testimony that when above comment was made or such reason advanced, the foreman admonished the jury

that such had nothing to do with the case, that it must be decided on the evidence, after which no further mention of expenses of litigation or trials was made. No one was able to identify the juror at the time on the two special issues that had been submitted.

If it is conceded that the comment complained of injected a factor into the discussion that the jury was not already aware of from what they had heard and observed and possibly knew, the comment complained of under the record as a whole would not support the conclusion that "it reasonably appears * * * that injury probably resulted to the complaining party." Rule 327, supra; Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W. 2d 62, 64.

In the trial of the case, Mrs. Lassiter testified that she had given all her interest in the estate to Mrs. Birmingham, her sister, and expected nothing regardless of the outcome of the suit. Mrs. Birmingham who was living on the farm moved into the home of Mrs. Coleman when the latter suffered the stroke. One juror testified that "some of the jurors stated to others that Mrs. Birmingham had received her part of the property including the house where Mrs. Coleman lived." Further on direct examination, he stated there had been some discussion to the effect that Mrs. Birmingham had her own interest and also her sister's (Mrs. Lassiter's) who lived in West Texas. On cross-examination he said that the only discussion was that she owned both her own interest and the interest that her sister had given her —no one said she had a deed to the home outright. Some did not hear any comment in this respect. According to others the only comments they heard as to such matter were to the effect that she would in any event receive her own and her sister's interest. The alleged comment in the jury room that Mrs. Birmingham would get her part of the estate and that of her sister was a comment on evidence that had been introduced in the trial. The allegation that it was stated she had received the home place was later qualified by the same juror and disputed by other jurors.

In this a question of fact was presented. The implied finding of the trial court in overruling motion for new trial will not be disturbed. Blaugrund v. Gish, Tex.Civ. App., 179 S.W.2d 257, 263; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

The record does not disclose who this Judson Daniel might be, whether he was for or against the probate of the will on a former trial, or in what respect his position in the former trial affected any juror in the instant trial. It is also in dispute that such name was mentioned. The provisions of Rule 327, supra, sustain the action of the trial court. Any other matter presented and not discussed is respectfully overruled.

The judgment is affirmed.