Henry Wade, Crim. Dist. Atty., William L. Alexander, Ben F. Ellis, Phil Burleson, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

Appellant was convicted, upon his plea of guilty, of the offense of robbery, and his punishment was assessed by a jury at confinement in the penitentiary for a term of 40 years.

John E. Shields, the injured party, called as a witness by the State, testified that on the date alleged, a man, who he positively identified as the appellant, came into his liquor store with a gun in his hand, and, while pointing the gun at him, demanded his money; that appellant proceeded to take the money from the cash register and then demanded that the witness give him the rest of his money; that he then gave appellant two billfolds which were under the counter and three billfolds which he had on his person. Shields testified that appellant took the total sum of $76.00 from him and that it was taken without his consent.

Appellant's voluntary written statement, made to Officer M. G. Hall following his arrest, was introduced in evidence by the State, in which he admitted having committed the robbery.

Appellant did not testify or offer any evidence.

There are no formal or informal bills of exception and no brief has been filed on behalf of appellant.

The evidence is sufficient to sustain the jury's verdict.

The judgment is affirmed.

Opinion approved by the Court.

James HAWKINS, Jr., Appellant,

v.

AETNA CASUALTY & SURETY COMPANY, Appellee.

No. 16269.

Court of Civil Appeals of Texas.

Fort Worth.

March 9, 1962.

Rehearing Denied April 6, 1962.

Spurlock, Schattman & Jacobs, and Kenneth M. Cole, Jr., Fort Worth, for appellant.

Crowley, Wright, Miller & Garrett, and William T. McGee, Fort Worth, for appellee.

BOYD, Justice.

This is a workmen's compensation case. James Hawkins, Jr., sued Aetna Casualty & Surety Company for compensation for total and permanent disability and recovered a verdict and judgment for seventy weeks of total temporary disability. Hawkins appealed.

The injury suffered by appellant resulted in a hernia. Appellee did not admit liability nor tender surgery. On appellant's motion, the court entered an order in limine instructing appellee, its agents, counsel and witnesses "not to mention before the jury, nor in any way refer to any possible beneficial effects, if any, that surgery would have for the hernia condition * * *."

Basically, appellant's points for reversal involve the propositions that there was no evidence to support the jury's finding of temporary disability, and that the judgment should be reversed and rendered for compensation for total and permanent disability; if in fact there was some evidence to support that finding, it was insufficient, and the judgment should be reversed and the cause remanded; that it was error to overrule appellant's motions for mistrial occasioned by what appellant characterizes as appellee's repeated and deliberate attempts to introduce prejudicial and inadmissible evidence in violation of the order in limine; and in refusing to grant a new trial because of alleged misconduct of the jury.

Appellant, age 47, was employed as a janitor at Bell Helicopter in August, 1956. From March, 1957 until October, 1959, he did not work at Bell on account of a general layoff. In that interval he pursued his former line of work, which was cutting grass, trimming trees, and general yard work. On returning to Bell's, among other things, his job required that he dispose of all waste in the plant. On the night of January 19, 1960, he was injured while lifting a 20-gallon can of rubber and paper, weighing about 100 pounds. He suffered sudden pain in the left groin. He continued his work until early in April, 1960. He first saw a physician on February 16. The physician was Dr. Sheinberg, Chief of Medical Services at Bell's. It was on appellant's second visit to Dr. Sheinberg on February 25 that the hernia was discovered. Appellant was then given lighter duties, which he performed until his vacation began early in April, 1960. He told his employer that during the vacation period he would get medical attention. He did not, but spent the time fishing. He returned for work on April 11, but was laid off on April 12, because "They couldn't run any further risk of me working."

Dr. Sheinberg testified that in his opinion appellant's hernia was not self-repairing through bodily processes; the course of this kind of hernia is to get progressively worse; some physicians inject medicines into hernias; he would not treat a hernia by that method, and in most cases it is not a desirable treatment; appellant is not qualified to pass a pre-employment physical at

Bell's if the witness examined him; he knew of no employer in the area who would employ appellant; appellant is totally disabled, and such condition will be permanent "unless something is done."

Appellant's medical witness, Dr. Gardener, who first saw appellant the day before the trial, testified that in his opinion appellant's disability is total and permanent; he said one method of treatment for hernia was by use of a truss; another, by the injection of a sclerosing agent; if the injection method should be used appellant's disability "might not be total and/or permanent; * * * Q. And if that procedure were carried out * * * then this man would not be totally disabled or permanently disabled would he? A. No, sir." He thought the use of a truss was dangerous, but he had heard of people who suffered from hernia who carried on normal, active lives while using trusses. He said the injection treatment is not now in general use, and is not usually reliable.

■ The extent and duration of disability caused by an injury are rarely susceptible of accurate measurement, and ordinarily involve questions of fact. Texas Employers' Ins. Ass'n v. Neatherlin, Tex. Com.App., 48 S.W.2d 967; Federal Underwriters Exchange v. Arnold, Tex.Civ.App., 127 S.W.2d 972; Hicks v. Georgia Casualty Co., 5 Cir., 63 F.2d 157; Employers Reinsurance Corp. v. Jones, Tex.Civ.App., 195 S.W.2d 810; Insurance Company of Texas v. Anderson, Tex.Civ.App., 272 S.W.2d 772.

In Texas Employers' Ins. Ass'n v. Fletcher, Tex.Civ.App., 214 S.W.2d 873, it was said:

"Our courts have held that in cases of this nature the duration of the disability is at best an estimate which must be determined by a jury from all the pertinent facts before it. * * *"

■ We can not say that there was no evidence to support the finding that appellant's disability was temporary, or that such finding is so against the great weight and preponderance of the evidence as to be clearly wrong.

Appellant's contention that appellee deliberately and repeatedly attempted to introduce prejudicial and inadmissible evidence in violation of the order in limine is based upon the following occurrences: Appellant testified that he was sent home from work because he had hernia. Appellee was permitted to show that in his deposition appellant said that he was sent home from work because he needed an operation. Appellee's witness Cox testified that appellant was sent home to get his hernia "taken care of." Appellee's medical witness was asked the following question by appellant, and gave the following answer: "Q. And this condition of the hernia is a permanent condition, is it not? A. Unless something is done." Appellee asked appellant's medical witness the following question: "Now Dr. Gardener, you don't mean to tell this jury that with proper medical treatment this man is totally and permanently disabled, do you?" An objection to the question was sustained. Then appellee asked the witness: "Q. Dr. Gardener, there are several methods of treating hernia, are there not?" To which the witness answered: "Yes, sir." The court sustained an objection to the question, but did not instruct the jury to disregard the answer. When each of these incidents transpired, appellant moved for a mistrial, and each motion was overruled.

■ While the question presented is not free from difficulty, we do not believe that the matters complained of amounted to such a denial of the rights of appellant as would be reasonably calculated to cause or did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. There was no testimony that surgery would benefit appellant; and since it was shown that there are methods of treating hernia other than by surgery, it does not necessarily follow that when such expressions as "taken care of" or "treatment"

were used, the witnesses or attorneys meant "surgery."

■ The point as to alleged jury misconduct is appellant's contention that although under the in limine order appellee could not introduce evidence as to the possible beneficial effects of surgery for appellant's hernia, appellee actually received credit for the surgery it did not tender.

One juror testified that "it was wondered by some of the jury why he couldn't have it (hernia) repaired or something like this. But I don't believe this was actually the basis for any kind of a decision. * * * I think that something was said, that is, that an operation could usually cure one." The juror said that one member of the panel had undergone surgery for hernia, and he thought this juror mentioned that fact in the jury room. He could not remember whether such juror stated what the result of the surgery was. "Q. Now then will you tell the Court as best you can remember now what conversation there was in the jury room about surgery for James Hawkins? A. It seems to me that it was brought up as to why it hadn't been done. I mean we didn't say that he could be cured by it, or anything like this. It was brought up at one time we wondered why he had not had some type of operation, which is usually the case of a hernia."

Another juror testified, "* * * we wondered why that he hadn't already got an operation. We talked about that. And then I believe that we decided to give him 70 weeks, I believe. * * * we wondered why he hadn't ever had—why he didn't get an operation—why he hadn't got one. And of course we didn't know. We didn't know what happened there. And then, I think probably we wondered if it would cure him if he had one. I think we talked about that. But nobody knew that, you see. And so, I think it was either to find him disabled partially or totally, and I think we decided

it was a partial thing. But we thought that he could or talked about that he could probably get an operation and get well. Q. And when you said earlier, you say that 'We wondered,' do you mean by that that the jury discussed it? A. Yes."

The trial court made the following findings and conclusions:

"I find that during the deliberation of the jury a discussion took place among the jury to the effect that a surgical operation would benefit the plaintiff and would probably result in a cure of a hernia.

"I further find that such discussion on the part of the jury probably entered into and affected the verdict returned by the jury in this case.

"Despite the foregoing Findings of Fact, I conclude, based on the evidence on the hearing of the Motion for New Trial, and from the record as a whole, that the discussions by the jury of the possible beneficial effects of a surgical operation, did not result in injury to the complaining party and did not, as a matter of law, constitute jury misconduct."

■ Since it does not appear that the jurors received evidence from one of their number as to the curative effects of surgery in a hernia case, we can not say that the trial court erred in holding that jury misconduct was not shown. Jurors have the right to consider and discuss their common knowledge and experience in life. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62.

There are other points which we have considered and which are overruled.

Believing that reversible error is not reflected, we affirm the judgment of the trial court.