Opinion issued April 24, 2008


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-01067-CV






NANCY VASQUEZ, Appellant


V.


BRENDA HILDENBRAND, Appellee






On Appeal from County Civil Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 838563






MEMORANDUM OPINION


 In this suit for negligence, appellant, Nancy Vasquez, appeals the jury verdict
rendered in favor of appellee, Brenda Hildenbrand. In eight issues on appeal,
Vasquez argues that (1) the jury's finding of zero damages for a) medical expenses
in the past and future, b) physical pain and mental anguish in the past, c) loss of
wages in the past, d) physical impairment in the past, and e) disfigurement in the past
is so against the great weight and preponderance of evidence as to be clearly wrong,
manifestly unjust, and blatantly inadequate; (2) the trial court committed judicial
misconduct and coerced the jury to render a verdict based on passion and prejudice;
and (3) the trial court abused its discretion in denying her motion to recuse.

 We affirm.

Background


 On July 1, 2005, Hildenbrand, who was on her way home from work, exited
from the Bay Area Boulevard and stopped behind Vasquez's car. Vasquez, who was
waiting at a yield sign for traffic to pass, started to go, but then stopped. 
Hildenbrand, seeing that Vasquez moved forward, also starting moving forward and
collided with Vasquez's car. Vasquez sued Hildenbrand for negligence for injuries
sustained in the accident.

 A jury found that Hildenbrand was 100% negligent but did not award Vasquez
any damages. Vasquez filed a motion for new trial and subsequently filed a motion
to recuse the trial court from considering the motion for new trial and from any
further participation in the case. The trial court declined to recuse himself, and the
matter was referred to the Presiding Judge of the Second Administrative Judicial
Region. The Presiding Judge denied the motion to recuse and the motion for new
trial was overruled by operation of law. Vasquez appeals the trial court's verdict and
the presiding judge's order denying the motion to recuse.

 Damages


 In her first six issues, Vasquez contends that the jury's failure to award any
money damages for (1) medical expenses in the past, (2) medical expenses in the
future, (3) physical pain and mental anguish in the past, (4) lost wages in the past, (5)
physical impairment in the past, and (6) disfigurement in the past is against the great
weight and preponderance of the evidence and is clearly wrong and unjust. 

 When we review a factual sufficiency point of error, we consider, weigh, and
examine all of the evidence that supports or undermines the jury's finding. Plas-Tex,
Inc. v. United States Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We review the
evidence keeping in mind that it is the jury's role, not ours, to judge the credibility of
the evidence, to assign the weight to be given to testimony, and to resolve
inconsistencies within or conflicts among the witnesses' testimony. Reyna v. First
Nat'l Bank, 55 S.W.3d 58, 73 (Tex. App.--Corpus Christi 2001, no pet.). We set
aside the verdict only when we find that the evidence, standing alone, is too weak to
support the finding or that the finding is so against the overwhelming weight of the
evidence that it is manifestly unjust and clearly wrong. Ortiz v. Jones, 917 S.W.2d
770, 772 (Tex. 1996); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).

 At trial, Vasquez testified that Hildenbrand hit her car "very hard." She
testified that she was hit in the back and that the light was smashed along with the
metal around the light and that there was damage to the bumper. She testified that
there was $700 in damages to her car. Vasquez testified that the collision with
Hildenbrand's truck "wasn't that bad, that hard--she come very hard, around maybe
20, 30 miles per hour." After the collision, her children in the car were scared and so
was Vasquez. Vasquez answered "yes" when she was asked if she was injured in the
accident. She testified that "my back, my neck. Because when I'm--I was--when
I tried to look like that, she come and hit me, and then this start to hurt like right
around my neck." 

 Vasquez testified that she was in therapy for three months and that, during this
time, she was not working as a housekeeper. She testified that she generally worked
for 6 to 7 hours a day and made $75 a day. During the time she was having
treatments, she felt pain in her neck and back. In the beginning, she had pain "all the
time." Before seeing the doctor, she took Tylenol for the pain and then she got a
Vioxx prescription. During the trial, Vasquez testified that sometimes she is in pain. 
Vasquez testified that "when I get very sick, all I do is sit in bed. Just in bed. And
I can't play with my kids, and I can't do a lot of things we used to do." After the
collision, she testified that she feels pain and that she "can't play and do anything." 
Vasquez said she was not asking for any future damages. 

 On cross-examination, Vasquez testified that after the accident, her vehicle was
not pushed into the intersection. She volunteered that the impact "wasn't too hard,"
but she was scared after the accident because she was worried about her children. 
Vasquez testified that her children and her 50-year old passenger were okay. She
stated that at the accident, she did not feel pain immediately. Vasquez changed her
testimony after listening to her prior deposition testimony in which she had said that
her back started to hurt immediately. She then clarified that she felt a little pain at the
scene, but that she did not need medical attention at the scene. Vasquez testified that
after the accident she went to work, but only for easy babysitter jobs. She could not
remember when she returned to work, but she recalled that she returned to work a few
times before seeing Dr. Bergeron. She thought she missed two months of work, but
her testimony was not clear. Since her deposition, she had had neck and back pain,
but she had not returned to the doctor to get it evaluated. 

 A few days after the accident, Hildenbrand's mother and father came to
Vasquez's residence to view the property damage. At that time, Vasquez told them
that the only damage to her car was the broken taillight. She agreed that when
Hildenbrand's parents came, she told them that she did not have any injuries. She
also agreed that she told them that she was worried about having the car fixed before
her husband came home, even though she was not married at that time. 

 Vasquez then testified inconsistently about whether she was working during
the two months after the accident. She said that sometimes she worked if she felt
better. She agreed that sometimes she did housekeeping during the two months
following the accident. She stated that she did not bring evidence for the jury to
examine to support her lost wages claim. 

 Dr. Bergeron testified that he owns two clinics and sees about 60 to 80 patients
a day and that Vasquez came to the clinic, but saw Dr. Conti, one of his associates. 
He agreed that a history was taken, but testified that Dr. Conti took the history. Dr.
Bergeron testified that Vasquez was in an accident and had developed "mid and low
back pain." The results of an examination showed "minimal tenderness of the
thoractic spine. However, examination of the lower back showed severe muscle
spasms in forward flexion with an antalgic curvature of the spine and right-sided
paravertebral muscle spasm." Appellant's counsel asked, "After your examination
of Nancy, were you able to make a diagnosis?" Dr. Bergeron answered, "Cervical,
thoracic and lumbar sprain/strain." Dr. Bergeron testified that at the time of the
diagnosis, he believed Vasquez was in pain. Dr. Bergeron testified that, based on
reasonable medical probability, Vasquez suffered those injuries as a result of the car
accident. Dr. Bergeron further testified that Vasquez was treated for about four
weeks and that, during this time, she was given anti-inflammatory medication, a
muscle relaxer, and Vioxx for pain. In his opinion, he believed she was suffering. 

 On cross-examination, Dr. Bergeron agreed that he did not treat Vasquez and
that he never examined her. Dr. Bergeron further agreed that daily lifting, bending,
and stooping can cause a soft-tissue injury if not done properly. He also agreed that
vacuuming, sweeping, mopping, lifting, and dusting are other activities that, if not
done properly, could result in a soft-tissue injury. Dr. Bergeron testified that when
Vasquez came into the clinic she was continuing to work and that the medical records
did not indicate a recommendation for Vasquez to stop working. Dr. Bergeron
testified that Vasquez saw Dr. Conti on three visits and that the rest of the
appointments were appointments for physical therapy that was also part of the clinic.
Dr. Bergeron agreed that the patient is under a "letter of protection." He described
the letter of protection as something an attorney gives you which states that if and
when a case settles you will be paid for your medical treatments if those treatments
are not paid by insurance. Dr. Bergeron testified that, on the last visit, Dr. Conti told
Vasquez to come back as needed but that she had not returned. 

 Diane Ortiz, Hildenbrand's mother, testified that she and her husband visited
with Vasquez a few days after the accident. Ortiz testified that the taillight and the
rim of the light were damaged in the accident. She testified that Vasquez told her that
the damage to the car was the broken taillight and that the only damage was the "light
and the little rim around the light." She testified that Vasquez told her that everyone
was fine. When asked about Vasquez's condition, she stated that "she ran after her
child," "[s]he was not hurt," and "[Vasquez] said there was no injuries." 

 Hildenbrand testified that they were both stopped at a yield sign and when
Vasquez started to go Hildenbrand started to go too, but then Vasquez stopped and
Hildenbrand could not stop in time. Hildenbrand testified that she was driving
approximately 5 to 10 miles per hour when she hit Vasquez's car. She testified that
when they got out of the car in a parking lot Vasquez did not complain of any neck
or back pain and that both cars were driven away from the scene. 

 At trial, Vasquez presented evidence that her car was rear ended by
Hildenbrand and that at the scene of the accident, Vasquez felt some pain. She
eventually saw a doctor who prescribed pain medication and physical therapy. Dr.
Bergeron testified at the trial that, based on medical probability, she had pain and that
she had received a diagnosis of "[c]ervical, thoracic and lumbar sprain/strain." He
produced evidence that her past medical expenses were $2,791.00. 

 Hildenbrand presented controverting evidence, both through direct-examination of her own witnesses and cross-examination of Vasquez's witnesses, that
(1) the damage to Vasquez's car was very slight and that she hit Vasquez's car at
approximately 5 to 10 miles per hour; (2) none of the other passengers in Vasquez's
car was hurt from the collision; (3) Vasquez said she was okay at the scene; (4) both
Vasquez and Hildenbrand were able to drive their cars away from the accident; (5)
no police or ambulance was called to the scene; (6) Hildenbrand's mother saw
Vasquez a few days after the accident, and Vasquez said there were no injuries; (7)
Hildenbrand's mother saw Vasquez run after her young son; (8) Vasquez told
Hildenbrand's mother that the only damage to the vehicle was the taillight; (9)
Vasquez testified inconsistently as to whether she worked after the accident and how
much work she missed after the accident; (10) Dr. Bergeron testified that Vasquez
had a soft tissue injury, but he also testified that another doctor was the doctor who
treated Vasquez.

 The mental processes by which a jury determines the amount of damages are
ordinarily incognizable by an appellate court. See Thomas v. Oldham, 895 S.W.2d
352, 359-60 (Tex. 1995). In assessing personal injury damages, the trier of fact has
great discretion in fixing the amount of the damage award. See McGalliard v.
Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). Opinions and judgments of expert
witnesses are not conclusive on the jury. Id.; see Callejo v. Brazos Elec. Coop., 755
S.W.2d 73, 75 (Tex. 1988). Jurors weighing evidence have a right to use their
common knowledge and experience, and, if the opinions of the experts as given in the
evidence do not comport with the jurors' sense of sound logic, they have a right to say
so. Maryland Cas. Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64 (1945). 

 It is peculiarly within the jury's discretion to determine the dollar amount of
a plaintiff's pain and suffering. Lege v. Jones, 919 S.W.2d 870, 877 (Tex.
App.--Houston [14th Dist.] 1996, no writ). There are no objective guidelines by
which a court may measure the money equivalent of mental pain, and much discretion
must be allowed to the jury in fixing this amount. Green v. Meadows, 527 S.W.2d
496, 499 (Tex. Civ. App.--Houston [1st Dist.] 1975, writ ref'd n.r.e.). The
determination of the amount of money that will compensate the plaintiff for physical
injuries, impairment, and mental anguish involves a consideration of elements for
which no mathematical standard exists except what an honest or impartial jury may
deem adequate. Dico Tire, Inc. v. Cisneros, 953 S.W.2d 776, 792 (Tex.
App.--Corpus Christi 1997, pet. denied). Lost wages or earnings refers to the actual
loss of income due to an inability to perform a specific job from the time of injury to
the time of trial. Strauss v. Cont'l Airlines, Inc., 67 S.W.3d 428, 435 (Tex.
App.--Houston [14th Dist.] 2002, no pet.). A claim for past medical expenses must
be supported by evidence that such expenses were reasonable and necessary as a
result of the injury. See Texarkana Mem'l Hosp., Inc. v. Murdock, 946 S.W.2d 836,
840 (Tex. 1997). Disfigurement has been defined as that which impairs the
appearance of a person, or that which renders unsightly, misshapen or imperfect, or
deforms in some manner. Goldman v. Torres, 161 Tex. 437, 341 S.W.2d 154, 160
(1960); Sunbridge Healthcare Corp. v. Penny, 160 S.W.3d 230, 252 (Tex.
App.--Texarkana 2005, no pet.).

 The jurors were charged to observe the witnesses, to evaluate their demeanor
and the credibility of their testimony, and to resolve inconsistencies in the evidence. 
In determining the sufficiency of the evidence to support the jury's findings, the
appellate court accepts, and will not interfere with, the jury's resolution of any
conflicts or inconsistencies in the evidence. Ortiz v. Ford Motor Credit Co., 859
S.W.2d 73, 76 (Tex. App.--Corpus Christi 1993, writ denied) (citing Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986)).

 While the jury's determinations might be different from those that a trial court
or appellate court might have made, our review of all the evidence leads us to
conclude that the jury's findings of zero damages for past medical expenses, medical
expenses in the future, physical impairment in the past, and disfigurement in the past
are not so against the overwhelming weight of the evidence that they are manifestly
unjust and clearly wrong. See Ortiz, 917 S.W.2d at 772; Garza, 395 S.W.2d at 823. 
Although Vasquez presented evidence that she had past medical expenses, medical
expenses in the future, physical impairment in the past, and disfigurement in the past,
the jury reasonably could have determined that there was no damage or that any
damages were attributable to factors other than the collision. See McDonald v.
Dankworth, 212 S.W.3d 336, 348-49 (Tex. App.--Austin 2006, no pet.) (affirming
jury's zero damages award for physical impairment and physical pain and mental
anguish); Walker v. Ricks, 101 S.W.3d 740, 750 (Tex. App.--Corpus Christi 2003,
no pet.) (affirming jury's zero damages award for past medical expenses, past
physical pain and suffering, past mental anguish, and past physical impairment). 
Regarding Vasquez's claim for physical pain and mental anguish in the past, the jury
reasonably could have concluded that no damages were warranted because of (1) the
minor nature of the accident, (2) Vasquez's condition at the scene of the accident, and
(3) Vasquez's condition at her home after the accident. See McDonald, 212 S.W.3d
at 348-49; Walker, 101 S.W.3d at 750. We also conclude that the jury's
determination of zero damages for lost wages is factually sufficient because the jury
heard testimony that she did work to varying degrees during the time she was seeking
lost wages. In addition, the jury may have concluded that other factors caused her to
miss time from work. 

 We overrule Vasquez's first, second, third, fourth, fifth, and sixth issues on
appeal.

Judicial Misconduct


 In her seventh issue, Vasquez argues that the trial court exhibited judicial
misconduct and that it coerced the jury to render a verdict based on passion and
prejudice. Within this issue, Vasquez alleges 15 instances of judicial misconduct. (1) 
Vasquez argues that the 

atmosphere permeated the courtroom and, consciously or
subconsciously, swayed the attitude of the entire jury against [her] and
prevented her from receiving a fair trial. The Court's admonitions,
accusations, derogations, and theatrics couched in patriotic and religious
displays directed against [her] counsel throughout the trial, influenced
the jury to view [her] and her counsel as outsiders. They were not to be
trusted because the Court did not deem them worthy of trust. The
cumulative effect of such misconduct and the effect on the jury was
calculated to cause and in all probability did cause the rendition of this
improper, wrongful judgment.


 The discretion vested in the trial court over the conduct of a trial is great. Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 240 (Tex. 2001). A trial court has the
authority to express itself in exercising this broad discretion. Id. at 240-41. Opinions
the judge forms during a trial do not necessitate recusal unless they display a
deep-seated favoritism or antagonism that would make fair judgment impossible. 
Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994). Judicial
remarks during the course of a trial that are critical or disapproving of, or even hostile
to, counsel, the parties, or their cases ordinarily do not support a bias or partiality
challenge. Id. Expressions of impatience, dissatisfaction, annoyance, or anger do not
establish bias. Id. at 555-56, 114 S. Ct. at 1157. Such remarks may constitute bias
if they reveal an opinion deriving from an extrajudicial source; however, when no
extrajudicial source is alleged, such remarks will constitute bias only if they reveal
such a high degree of favoritism or antagonism as to make fair judgment impossible. 
See Ludlow v. DeBerry, 959 S.W.2d 265, 271 (Tex. App.--Houston [14th Dist.]
1997, no writ).

 To reverse a judgment on the ground of improper conduct or comments of the
judge, we must find (1) that judicial impropriety was in fact committed and (2)
probable prejudice to the complaining party. Metzger v. Sebek, 892 S.W.2d 20, 39
(Tex. App.--Houston [1st Dist.] 1994, writ denied). 

 The record shows that most of the alleged acts of misconduct concern events
that happened outside the presence of the jury. Thus, although Vasquez argues that
the "[c]ourt's admonitions, accusations, derogations, and theatrics couched in
patriotic and religious displays directed against [Vasquez's] counsel throughout the
trial, influenced the jury to view [Vasquez] and her counsel as outsiders," the record
shows that the jury could not have been influenced by the trial court's actions because
most of the actions happened outside the presence of the jury. For the remaining
allegations of misconduct, the record shows that Vasquez did not assert any
objections to what she now complains of on appeal. Thus, her complaints are waived. 
See Tex. R. App. P. 33.1. Moreover, we have examined the entire record and
conclude that Vasquez has failed to demonstrate judicial impropriety that resulted in
harmful error. And, as in Metzger, we decline to unnecessarily lengthen this opinion
with a review of each exchange Vasquez identifies in her brief, because no useful
purpose would be served by doing so. See Metzger, 892 S.W.2d at 39. 

 We overrule Vasquez's seventh issue on appeal.

Motion to Recuse


 In her eighth issue, Vasquez argues that the trial court erred in denying her
motion to recuse. After filing the motion to recuse, the trial court declined to recuse
himself. The matter was referred to the Presiding Judge of the Second Administrative
Judicial Region who held a hearing on the motion and denied the motion to recuse. 

 We review the denial of a motion to recuse under an abuse of discretion
standard. Tex. R. Civ. P. 18a(f); McElwee v. McElwee, 911 S.W.2d 182, 185 (Tex.
App.--Houston [1st Dist.] 1995, writ denied). The test for an abuse of discretion is
whether the trial court acted without reference to any guiding rules or principles, or
acted arbitrarily or unreasonably. See Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241 (Tex. 1985). 

 In her motion to recuse, Vasquez alleged that the trial court showed a "pattern
of behavior [that] shows a personal bias and prejudice toward [Vasquez] and the
subject matter of this case to such an extent that the trial court's impartiality may be
reasonably questioned in any further hearings or proceedings." 

 At the recusal hearing, Vasquez's counsel testified that the trial court made
inappropriate comments like "you Italians stick together" and that "he was sorry that
the jury would not get to see two Sicilians go at it." However, the evidence also
showed that the trial court made these remarks out of the presence of the jury. 
Vasquez's attorney also presented evidence that while his jury was in the waiting
room the trial court took pictures with a district court judge and spoke with another
jury. Vasquez's attorney testified that the trial court gave the jury a speech about
patriotism, stated that the bailiff was a real war hero, and made the jury take a pledge
of allegiance to the flag. He testified that the trial court put the Bible on top of the
rules of procedure and kept it on display. He testified that the trial court told him to
make his objection in two words or less. He then described an exchange he had had
with the trial court about insurance, during which opposing counsel "opened the
door" to insurance, and he stated that the trial court had made the jurors swear that
they would not make a decision based on the availability or lack of insurance. 
Vasquez's counsel said he felt pressured to agree to the trial court's question to the
lawyers about waiving the reading of the charge. He testified that he made a
comment during closing arguments that "he had something to do with the charge,"
which caused the trial court to reprimand him in front of the jury because it was the
trial court's charge. He also discussed how the trial court left the courtroom with
another judge to do something in the other judge's courtroom, but when he went to
the other courtroom, it was locked. Vasquez's counsel testified that Hildenbrand had
filed a motion for sanctions prior to trial and that, during the trial, the trial court said,
"I'll be taking care of you with the Motion for Sanctions later." He testified that
during a bench conference to settle a dispute, the trial court said that it would take
both of the lawyers outside and work them over, but counsel agreed that this comment
was not on the record. He testified that he was "astounded" when the trial court asked
the lawyers, "Which one of you is going to bring the donuts tomorrow?" He also
testified that at approximately 5 p.m. during the trial, the trial court slammed a time
clock down and said "I'm putting you on the time clock to make sure you finish in ten
minutes." Vasquez's counsel summarized his grounds for recusal, "So I think that his
pattern of misconduct was so high with such antagonism and showing such favoritism
that it was impossible for my client to get a fair trial."

 Generally, judicial remarks during a proceeding that are critical or even hostile
to counsel, parties, or their cases, do not support recusal. Ludlow v. DeBerry, 959
S.W.2d 265, 271 (Tex. App.--Houston [14th Dist.] 1997, no pet.). "Such remarks
may [support recusal] if they reveal an opinion deriving from an extrajudicial source
and such remarks will do so if they reveal such a high degree of favoritism or
antagonism as to make fair judgment impossible." Id. 

 Having reviewed the recusal hearing record, we do not find that the
administrative judge acted arbitrarily or unreasonably, or without any reference to
guiding rules and principles, in denying Vasquez's motion to recuse. The evidence
does not show that the trial court's impartiality might reasonably be questioned or
that the trial court had a personal bias or prejudice concerning the subject matter or
a party. See Tex. R. Civ. P. 18b(2)(a)(b).

 We overrule Vasquez's eighth issue.




Conclusion


 We affirm the judgment of the trial court.

 


 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.

1. Vasquez complains about (1) ethnic remarks; (2) patriotic sermon and pledge of
allegiance; (3) Bible display; (4) restricting objections; (5) requiring second jury oath;
(6) singular oral charge; (7) making a personal attack during closing argument;
(8) being absent from the courtroom; (9) refusing to rule on a frivolous motion;
(10) threatening assault; (11) asking counsel to bring donuts for the jury; (12) placing
counsel on a time clock; (13) denying rebuttal; (14) visiting with another panel; and
(15) forbidding juror interviews.